SEXTON, Judge Pro Tem.
11 Plaintiff Porsche Henderson appeals a ruling by the trial court that she failed to carry her burden of proving that her tinnitus and permanent partial hearing loss were caused by an automobile accident for which Defendant Amsar Gregory[1] was admittedly 100 percent at fault. The trial court awarded all special damages and general damages of $8,500 for other injuries, but not for Porsche’s tinnitus and hearing loss. Finding manifest error in the trial court’s ruling on causation, we increase the award of general damages to include damages for the tinnitus and permanent partial hearing loss in the amount of $90,000. As amended, the judgment is affirmed.

FACTS

Porsche Henderson and Amsar Gregory were involved in an automobile accident resulting in injuries to Porsche. The impact was severe enough to cause Porsche’s air bags to deploy. Porsche was a 17-year-old high school student at the time of the accident. Ms. Gregory failed to yield the right-of-way and stipulated that she was 100 percent at fault in the accident, but reserved her right to challenge causation to Porsche’s claimed injuries. There is no dispute that Porsche suffers from tinnitus and permanent partial hearing *820 loss of 30-35 percent in her left ear. The issue is whether the accident at issue caused these conditions.
Porsche filed suit for damages against Ms. Gregory, Thomas Robinson, the owner of the vehicle Ms. Gregory was driving, and State Farm Mutual Insurance Company, the insurer of Mr. Robinson’s vehicle li>(“Defendants”). Following trial, the judge awarded special and general damages for certain injuries, but concluded that Porsche failed to prove by a preponderance of the evidence that the accident caused the tinnitus and hearing loss.
The judgment utilized is a form judgment, which provides a small section for reasons for judgment. The abbreviated reasons state:
On 6/14/06, Plaintiff was involved in a collision with Defendant to an extent that her air bag deployed. By stipulation, Defendant acknowledged being completely at fault. The main issue at hand is whether the “tinnitus” and left ear hearing loss of Plaintiff were caused by the accident of 6/14/06. Through testimony and other evidentiary offerings, this Court was convinced that Plaintiff suffered burns to her face, a sore wrist, ear ringing, an ankle injury, back pain, and elbow pain; all of which is compen-sable in the amount of $8,500. Medical expenses in the amount of $7,604.13 are awarded to Plaintiff as well. On the issue of whether the “tinnitus” and left ear hearing loss of Plaintiff were caused by the accident of 6/14/06, this Court finds, and concludes, that Plaintiff did not meet her burden of proof on that issue.
(Emphasis added.)
This appeal ensued.

DISCUSSION

Porsche assigns five errors on appeal, which raise the primary issues of whether the trial judge erred in finding that she failed to prove causation regarding her tinnitus and hearing loss and, more specifically, whether the trial judge erred in refusing to consider and apply the presumption of causation set forth in Housley v. Cerise, 579 So.2d 973 (La.1991).

Standard of Review and Applicable Law

In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury and the accident which caused the | ¡¡injury. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757. Proof must be by a preponderance of the evidence. Maranto, supra. The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id. Causation is a question of fact and is subject to the manifest error standard of review. Green v. K-Mart Corp., 03-2495 (La.5/25/04), 874 So.2d 838.
To obtain the benefit of the presumption of causation described in Housley v. Cerise, supra, the plaintiff must show (1) that he or she was in good health prior to the accident at issue, (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward and (3) through evidence, either medical, circumstantial or common knowledge, a reasonable possibility of causation between the accident and the claimed injury. Housley, supra. If the plaintiff can show these three elements, then he or she is entitled to a presumption of causation and the burden of proof shifts to the defendant to prove some other particular incident could have caused the injury of which the plaintiff complains. If the plaintiff cannot show *821 these three elements, he or she is not entitled to a presumption of causation and the burden of proof does not shift to the defendant. Housley, supra. To rebut this presumption, the defendant must show that some other particular incident could have caused the injury in question. Detraz v. Lee, 05-1263 (La.1/17/07), 950 So.2d 557; Bruce v. State Farm Ins. Co., 37,704 (La.App.2d Cir.10/29/03), 859 So.2d 296. The application of the Housley presumption of |4causation to the facts is also a question of fact and subject to manifest error review. Detraz, supra.

The Evidence

As previously stated, there is no dispute that Porsche suffers from tinnitus and 30-35 percent permanent partial hearing loss in her left ear; the only questions before us are applicability of the Housley presumption and causation.
Defendants elicited deposition testimony from Porsche’s treating physicians regarding the spectrum of possible causes of hearing loss, which include blunt trauma, chronic sinus and/or ear infections and congenital or idiopathic conditions. Specifically, Defendants offered the following three alternative causes of Porsche’s hearing loss: 1) alleged chronic allergies/sinus infections and two complaints that her ear was stopped up and she could not hear clearly when she was 13 years old; 2) a prior car accident on October 31, 2005, seven months prior to the June 14 accident, after which she was treated for headaches and neck and back pain; and 3) a punch to the lower lip area by a boy at her school on May 11, 2006, one month prior to this accident.
Counsel for Porsche characterizes Defendants’ reliance on the three alternative possible causes of Porsche’s hearing loss as pure speculation and asserts that no evidence was presented suggesting a causal link between any of the three alternative occurrences and the hearing loss. First, Dr. Dhaya Kutnikar, Porsche’s pediatrician, testified regarding her treatment of Porsche for childhood ailments, including sinus and allergy problems. | aDr. Kutni-kar was not involved in the treatment of Porsche’s current hearing issues. A reading of Dr. Kutnikar’s testimony reveals that Porsche was not atypical in her complaints to her pediatrician. She experienced upper respiratory problems from time to time and had a continuing prescription for allergy medication. On two occasions, when Porsche was 13 and 15 years old, she complained that she could not hear well out of her left ear. Dr. Kutnikar testified that Porsche’s ear was simply “stopped up” and the condition resolved with allergy medication. Dr. Kutni-kar attributed any ear pain to TMJ (a condition involving the muscles surrounding the jaw) and the hearing problem to allergies. Dr. Kutnikar testified that Porsche did not suffer from chronic ear infections; rather, he had only twice prescribed Porsche antibiotics for ear infection. Had he suspected a serious or permanent hearing issue with Porsche, Dr. Kutnikar testified that he would have referred her to an ear, nose and throat specialist.
Second, Defendants introduced Porsche’s medical records from her treatment after the October 31 automobile accident. Porsche complained of back and neck pain and headaches following the accident. Medical records indicate that, while she was treated for headaches, all of her injuries, including the headaches, resolved in a timely fashion following that accident. Porsche made no complaint of head trauma or ringing in the ear or hearing loss following the October 31 accident.
Third, Defendants offer the punching incident that happened a month before the accident as an alternative cause of the *822 hearing loss. The testimony reveals that the blow was to the left side of her face and the injury | nwas minor, causing a slight abrasion, with no bleeding, to Porsche’s lower lip. Porsche’s parents did not seek treatment from Dr. Kutnikar on that date; however, Dr. Kutnikar testified that someone called her office and requested an X-ray of Porsche. She ordered x-rays of the left jaw area which showed no injury. Mr. Henderson testified that he requested the X-ray. When asked about the extent of the injury from the punch, Porsche testified:
... It was just my lip. I had two small cuts under my lip and my lip was swollen. That was it. And the only reason I went to get a CT scan was because my daddy wanted me to go to make sure nothing happened to me on the Neville school ground.
There is no evidence that Porsche made any complaints of ear ringing or hearing loss following any of the above-offered alternative causes of her hearing loss. She maintains that the ringing in her ear and hearing loss began the day after the June 14 accident, that she had never experienced it prior to the accident and it has not subsided since the accident.
In addition, Defendants argue that Porsche failed to list the two above “trauma” incidents in answer to interrogatories or in her deposition in response to questions about any previous accidents or trauma to the head and/or jaw area. Further, Defendants note that she did not include them in her patient histories with the treating doctors. In this regard, Porsche testified that she was confused by the questions and was thinking in terms of ear accidents and the like. She stated:
[W]hen you were referring me to accidents, like I really — like I wouldn’t refer a getting hit in my mouth an accident. Like I wouldn’t think you was (sic) talking about that type of accident. I was thinking more of car wrecks.
[[Image here]]
|7At that time, like I said today I understand the question because I’m much older. At the time I probably did (sic) even know what trauma meant, so I couldn’t tell you what I was thinking at the time. I was young, but I know I was confused by the question.
Porsche was later asked about her testimony that the instant accident was the only “significant trauma” that she had experienced to her head, face or jaw. She explained why she did not include the punching incident in her answer:
To me that was the only significant trauma, because I remember my hearing after the accident, I didn’t have my hearing anymore. Now if I would have noticed after he hit me [the punching incident], then I would’ve remembered that. But I couldn’t remember because it was like really nothing happened.
She maintains that she simply did not realize the significance of the two prior incidents and that their exclusion was not intentional or deceitful. Defendants, on the other hand, urge that Porsche’s testimony be discounted because of her failure to list the incidents and her failure to include them in her patient histories.
The following is a summary of additional evidence, including medical records and testimony. The doctors testified via depositions, which were introduced at trial. Porsche and her parents provided live testimony at trial.
At the time of trial, Porsche was 22 years old and a student at Grambling University. Porsche testified that she was traveling 45 m.p.h. when the accident occurred and the air bag deployed, hitting her in the hands, arms, neck and face. She was treated at Morehouse General *823 Hospital Emergency Room by Dr. Clarence Whitehead. The ER records indicate that her primary complaints were injury to her ankle and arms burning from the |sair bag. Dr. Whitehead testified in deposition that he had no independent recollection of treating Porsche, but noted from the records that she did not complain of trauma to her head or ringing of the ears in the ER. He opined that patients generally complain of what is hurting the most at the time, which, in this case, was Porsche’s ankle. He further testified that it is typical with air bag deployment to see redness of the face and abrasions and burns and that air bag deployment can cause injury.
Again, Porsche testified that she first experienced the ringing in her ears the day after the accident. This prompted her mother to schedule an appointment with Dr. Ronald Woods, family practitioner, who saw Porsche on June 26, 2006,12 days after the accident. In addition to maintaining her complaints about the ankle injury, Porsche presented to Dr. Woods with complaints of headaches, ringing in her left ear and intermittent ear aching. The first complaint Porsche wrote on her patient intake paperwork was “Very bad headaches. Ring (sic) in my left ear and ear aches sometimes[ — ]” Dr. Woods diagnosed Porsche with tinnitus (ringing of the ears), which was not within his expertise to treat. Notably, the trial judge’s reasons for judgment indicate that he believed that Porsche suffered, inter alia, burns to her face and ear ringing. Dr. Woods testified that he hoped the ear ringing would improve; however, by July 6, 2006, when the majority of Porsche’s other accident-related injuries had resolved, she still complained of the ear ringing. Dr. Woods released her from his care on July 20, 2006.
Porsche saw Dr. Joel Norris, an ear, nose and throat specialist, on July 31, 2006, six weeks after the accident. Dr. Norris consulted with an | ^audiologist and diagnosed Porsche with a sudden partial hearing loss of 30-35 percent in her left ear. He testified:
Well, if you have a trauma which we’re assuming we did, then you can have a hearing loss as a result of that. It can be concussive in nature as in a cochlear concussion. It can be stress-related following that. It can be a number of things, but if one is in an automobile accident, and states they have hearing loss afterwards, we assume that they did.
Dr. Norris was unaware of any past history of trauma to Porsche’s head and jaw areas, discussed supra; therefore, he declined to opine specifically as to causation.
Dr. Norris referred Porsche to Dr. James House, a specialist in Otology, which is the practice of medicine of the ear. Porsche’s parents took her to see Dr. House in Jackson, Mississippi, on November 29, 2006. Dr. House confirmed the permanent partial hearing loss of the left ear and testified in deposition that air bag deployment can cause hearing loss. Specifically, Dr. House testified that air bag deployment is extremely loud and can cause damage to the inner ear and the force of the deployment can rupture the eardrum. Dr. House presumed that the accident and air bag deployment were the causes of the hearing loss because it was immediately present after the accident, but not present before it. Like Dr. Norris, Dr. House was unaware of Porsche’s history as described above and acknowledged that any of those occurrences could cause hearing loss, but audiology testing would have been essential after the incident(s). Since there had been no prior complaints of hearing loss, there had been no prior audiology testing. Dr. House further opined that Porsche would have known *824 that she had ear problems following each of those incidents; and, as | instated, •Porsche never complained of any ear ringing and/or hearing loss prior to this accident. Specifically, Dr. House testified that a victim of a blunt blow to the head would know about the hearing loss within a week or two after the incident. Ultimately, Dr. House agreed that it would be reasonable to conclude “that the probable cause of the hearing loss is the motor vehicle accident wherein [the] air bag deployed” if Porsche had no history of hearing Joss before the air bag deployed, but experienced a loss of hearing after the air bag deployed.
Porsche’s mother, Yolanda Henderson, is a registered nurse. She testified that she enjoys a close relationship with Porsche and that she has been actively involved in Porsche’s healthcare. She stated that either she or her husband, Kenneth Henderson, always accompanied Porsche to visits to the doctor. According to Ms. Henderson, if Porsche had experienced hearing issues prior to this accident, she would have known about it and would have taken her to the doctor. Ms. Henderson also corroborated Porsche’s testimony that the punching incident involved only a minor injury to her lip and did not involve the jaw or ear. Next, Mr. Henderson, testified and confirmed that he requested the X-ray be done after the punching incident. Porsche’s parents appear to be conscientious, caring parents who have taken their daughter to the doctor when needed and have provided consistent medical care for any issues she has experienced as they have arisen.
|, i The Housley Presumption and Causation
Based on the above-described evidence, we conclude that the trial court manifestly erred in refusing to afford Porsche the presumption of causation set forth in Housley, supra. There is no evidence in this record to suggest that Porsche was not in good health immediately prior to this accident. Her injuries from the car accident some seven months previous were completely resolved before this accident. Porsche had no lingering effects from the punching incident and the only evidence of any ongoing health issues is that she suffers from allergies. Next, it is clear from the testimony and evidence that Porsche first complained of ringing in her left ear and hearing loss the day after this accident. There is no evidence to the contrary. Further, there is no dispute that she does, in fact, suffer from a 3(L35 percent permanent partial loss of hearing in her left ear and that the condition persists to the present time. Finally, the evidence supports the finding of a reasonable possibility of causation existing between the June 14 accident and Porsche’s tinnitus and hearing loss. Thus, Porsche satisfied the three elements required for application of the Housley presumption. The burden then shifted to Defendants to offer a particular incident that could have caused the injury. Detraz, supra.
As previously stated, Defendants offer two particular alternative incidents which they claim could have caused the injury. First, all of the symptoms and complaints voiced by Porsche following the October 31 car accident had well resolved by the time of the June 14 accident. Significantly, she did not complain of tinnitus or hearing loss following the |12October 31 accident and her headaches had dissipated before the instant trauma. There is no evidence to suggest that the October 31 accident caused the tinnitus and hearing loss. Likewise, the record does not support a finding that the punching incident could have caused the injury. The evidence clearly shows that the injury from the punch was minor, causing a slight abrasion to the left lower lip. Mr. and Mrs. *825 Henderson did not even seek medical attention at the time of the injury. Mr. Henderson testified that he requested the X-ray and there was no injury. Moreover, Dr. House testified that a person suffering a blow to the head would experience any ear ringing or hearing loss within a week or two of the incident. Again, the evidence simply does not support a finding that the minor punching injury could have caused the tinnitus and permanent hearing loss that Porsche began experiencing a month later, and the day after being involved in a car accident. We find the supreme court’s rationale for rejecting such a speculative defense in Maranto, supra, to be instructive:
Defendants attempted to relate plaintiffs injuries to her driving her vehicle “long distances” to visit patients in Haughton, La. Alternatively, they would lead this court to believe that plaintiffs injuries were incurred while performing other job related duties. While medical testimony was such that everyday activities such as sneezing, driving, or coughing can herniate a disc, as the finder of fact, a court cannot speculate as to the vague possibilities for causation, when medical witnesses have established an event as to the probable cause of injury.
In summary, there is no competent evidence in this record that any of the three alternative causes offered by Defendants were, in fact, the cause of Porsche’s tinnitus and hearing loss. The trial court’s finding to the contrary was manifestly erroneous.
11SAssuming, arguendo, however, that the Housley presumption does not apply, we maintain that the trial court manifestly erred in finding that Porsche failed to prove causation by a preponderance of the evidence. For the reasons set forth above, the only reasonable conclusion to be drawn from this record is that Porsche proved, through her and her parents’ and medical testimony, that the accident of June 14, 2006, more probably than not caused her tinnitus and permanent partial hearing loss. It was manifest error for the trial court to conclude otherwise.
Finally, while we are cognizant of the importance of full disclosure of medical and/or accident history in discovery, we find no intentional omission on the part of Porsche regarding her previous car accident or the punching incident.

Damages

Interestingly, the trial court awarded all special damages, including the medical expenses of Drs. Norris, Woods and House. The trial court awarded general damages of $8,500 for “burns to her face, a sore wrist, ear ringing,[2] an ankle injury, back pain, and elbow pain.” Thus, our task is to evaluate and compensate Porsche for permanent damage to her left ear of 30-35 percent hearing loss and tinnitus and add this to the other general damage award.
In making an initial award of damages, an appellate court is not limited to either the highest or lowest amount of the reasonable range of 114 awards which would have been affirmed on appeal. Our responsibility is to award an amount which is fair and just for the damages supported by the record. Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La.App. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).
Dr. House testified that he does not consider Porsche’s left ear to be a very *826 useful ear for understanding speech. A left-ear hearing aid could increase the volume of the sound heard by the ear, but not the clarity of a voice. Dr. House explained that there are two other types of hearing aids available to Porsche; however, he did not find either option promising for any appreciable benefit to her.
Porsche testified that she occasionally experiences headaches and that her left ear rings constantly. Her hearing loss has caused her to experience dizziness and balance issues and sometimes she has pain and discomfort in her left ear. Porsche is unable to discern what people are saying when they are on her left side and battles continuously to listen and understand conversations. At only 17 years old, now 22, she has become shy and embarrassed and has withdrawn from her previously active extracurricular and social lives. Porsche is no longer a lifeguard because she is fearful of getting water in her ears, she withdrew from the church choir because of her inability to hear pitch and she no longer plays softball due to her fear of being hit in the head or ear by the ball. Porsche further testified that she is extremely careful with her ears and is fearful of something happening to her right ear that may cause her to lose all of her hearing. The doctors advised Porsche to avoid extremely loud noises in order to protect her level of |, ¿current hearing; now, Porsche is afraid to listen to music or the television too loudly.
The hearing loss has also affected Porsche in her studies. She must sit in the very front of the classrooms for lectures and meetings and still has some difficulty focusing and hearing all of the lecture. In addition, Porsche testified that she has trouble hearing the sermons in church. Clearly, Porsche’s life has been altered drastically by this injury and she has anxiety and angst regarding her inability to hear and the constant ringing in her ear.
Porsche has already lived years with this condition and the medical evidence confirms that the condition is permanent. Regarding this condition, we find a general damage award for Porsche’s past and future pain and suffering of $90,000 to be appropriate in this case.

DECREE

Since the judgment below and the reasons for judgment are contained in a one-page form ruling, and in light of the fact that the damage awards are contained in an asterisked notation entitled “ADDITIONAL REASONS FOR JUDGMENT (FOR COURT USE ONLY),” which likely contradicts La. C.C.P. art. 1918,[3] we hereby recast judgment in favor of Porsche Sade Henderson as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be Judgment in favor of Plaintiff Porsche Sade Henderson and against Defendant Amsar Gregory for $98,500 for general damages for pain and | ^suffering and for medical expenses in the amount of $7,604.18, together with legal interest thereon from judicial demand.
All costs herein are assessed to Defendant Amsar M. Gregory.
JUDGMENT AMENDED, RECAST AND AFFIRMED AS AMENDED AND RECAST.

. We note that the pleadings refer to Ms. Gregory as both "Amsar” and "Amber” throughout the record.

. Again, we note the curiously contradictory language of the "Ruling & Judgment,” wherein the trial judge writes that he was "convinced” that Porsche suffered ear ringing following the accident, but then specifically held that she failed to meet her burden of proof on the issue of causation with regard to her tinnitus (ear ringing) and hearing loss.

. La. C.C.P. art. 1918, Form of final judgment, provides, “A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment."