LOLLEY, J.
| joshlan Raymo, defendant, appeals a judgment by the Eighth' Judicial District Court for the Parish of Winn, State of Louisiana, in favor of Devon Zimmerman, plaintiff. The jury awarded Zimmerman general damages and medical special damages, along with costs of litigation. Zimmerman also appeals the final judgment as to the amount of damages awarded. For the following reasons, we affirm the judgment of the trial court.
Facts
On July 14, 2012, an incident occurred around 2:00 a.m., involving a Monte Carlo and a Hummer, owned by Future Expectations Community Care Services, LLC (“Future Expectations”), the employer of Joshlan Raymo, driver at the time of the incident. Devon Zimmerman and Michael Carter were in Zimmerman’s Monte Carlo; there was conflicting testimony over who was driving it. Zimmerman claims Raymo drove up quickly on her passenger side and sideswiped the Monte Carlo, forcing it into oncoming traffic. Raymo disputes this. Both vehicles parked on the left shoulder of Hwy. 84 near Winnfield, Louisiana, with the Monte Carlo facing on coming traffic and the Hummer parked facing the front of the Monte Carlo.
Zimmerman, Raymo, and Carter had a complicated personal relationship previous to these events, which explains Raymo’s intent during the incident. After parking the vehicles, a heated argument ensued between Zimmerman and Raymo, quickly escalating into a physical altercation, which was broken up by Carter. The parties had a moment to calm down. Raymo’s mother, Beverly Raymo, arrived, accompanied by Raymo’s [¡^brother, and parked behind the Monte Carlo, trapping Zimmerman in. Carter returned to the passenger seat of the Monte Carlo. Raymo returned to the Hummer and proceeded to ram the Hummer into the Monte Carlo three times. Conflicting testimony was presented concerning whether Zimmerman was talking with Beverly Raymo by the side of the highway or if she was in the Monte Carlo with Carter at the time Raymo rammed it. Ultimately, the jury found that Zimmerman was in her vehicle. Raymo maintains that the accident occurred because she was *1234 startled by a speeding car driving down the highway.
Louisiana State Trooper Lieutenant David Westmoreland first responded to the scene and called an ambulance for Carter. Zimmerman accompanied Carter in the ambulance. Once at the hospital, Zimmerman stated she had been in a car accident, but said nothing about the physical altercation between her and Raymo. The Monte Carlo was removed by a tow truck and found to be a total loss by Zimmerman’s insurance company, State Farm Mutual Automobile Insurance Company (“State Farm”).
Zimmerman filed a petition naming Ray-mo, Future Expectations and Progressive Security Insurance Company (“Progressive”), insurer for Future Expectations and the Hummer, as defendants. Subsequently, State Farm filed a petition naming Raymo and Progressive as defendants. Progressive answered both petitions alleging the “events giving rise to the suit were not accidental.” Both suits were later consolidated.
A jury trial ensued. After the first day of testimony the trial court dismissed Progressive by directed verdict, stating, “The Court takes apposition that there’s no way this is anything other than an intentional act.” The trial court deemed any objections made by Raymo to any purported expansion of the pleadings to be untimely, and denied Raymo’s motion for directed verdict on the issues of both liability and medical causation. The trial court allowed Zimmerman to continue presenting evidence of an intentional tort.
The jury found Raymo at fault for intentionally driving into the Monte Carlo. Further, the jury found Zimmerman’s actions were not a proximate cause of the incident, and also found she proved the physical and emotional pain she suffered following the incident. The jury awarded Zimmerman $70,000.00 in general damages and $12,819.50 in medical special damages. The trial court cast all costs of litigation to Raymo. At a subsequent hearing, Ray-mo’s motion for judgment notwithstanding the verdict was denied. Raymo appeals the judgment, and Zimmerman answers the appeal on the issue of damages.
Discussion
Courts of Appeal apply the manifest error standard of review in civil cases. Detraz v. Lee, 2005-1263 (La.01/17/07), 950 So.2d 557. To reverse a fact finder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Brewer v. J.B. Hunt Transp., Inc., 2009-1408 (La.03/16/10), 35 So.3d 230, 239. Ultimately, the issue to be resolved by the, previewing court is not whether the trier of fact was right or wrong, but whether, in light of the record reviewed in its entirety, the fact finder’s conclusion was a reasonable one. Id. The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Khammash v. Clark, 2013-1564 (La.05/07/14), 145 So.3d 246, 258.

Liability

In her first assignment of error, Raymo alleges that Zimmerman failed to carry her burden of proof at trial regarding liability. Raymo argues Zimmerman’s petition alleged only a theory of negligence, but at trial she presented only evidence of *1235 an intentional tort. Raymo claims Zimmerman should have amended the petition to include the intentional tort theory of recovery, and by presenting only evidence of an intentional tort at trial, failed to carry the burden of proof on the theory of negligence. Raymo further argues that the trial court erred in not granting her request for directed verdict on the issue of liability.
Louisiana is a fact-pleading state. La. C.C.P. art. 891; Greemon v. City of Bossier City, 2010-2828 (La.07/01/11), 65 So.3d 1263. The fact-pleading requirement replaces an earlier “theory of the case” pleading requirement. Id. at 1268. However, even though the “theory of the case” need no longer be pled, La. C.C.P. art. 891 provides that a petition “shall contain a short, clear, and concise statement of all causes of action arising | Bout of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation.” Id. So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence. La. C.C.P. art. 865; Udomeh v. Joseph, 2011-2839 (La.10/26/12), 103 So.3d 343, 349. No technical forms of pleading are required. La. C.C.P. art. 854. In order to plead “material facts” within Louisiana’s fact-pleading system, the pleader must state what act or omission he will establish at trial. Miller v. Thibeaux, 2014-1107 (La.01/28/15), 159 So.3d 426, 432. The petition must set forth the facts upon which recovery is based; otherwise the defendant would have neither adequate notice of the allegation nor an opportunity to counter the claim. Robertson v. West Carroll Ambulance Serv. Dist., 39,331 (La.App.2d Cir.01/26/05), 892 So.2d 772, 777, writ denied, 2005-0460 (La.04/22/05), 899 So.2d 577.
Under La. C.C. art. 2315, an individual is entitled to recover the damages he sustains as a result of another’s fault. That provision “contemplates responsibility founded on fault, namely, negligence or intentional misconduct.” Peters v. Allen Parish Sch. Bd., 2008-0323 (La.App. 3d Cir.11/05/08), 996 So.2d 1230, 1233-34. Historically, fault has been the basis for tort liability in Louisiana. Landry v. Bellanger, 2002-1443 (La.05/20/03), 851 So.2d 943, 949. Furthermore, Louisiana embraces a broad civilian concept of “fault” that encompasses any conduct falling below a proper standard, including intentional torts. Id. The intentional tort of battery is a harmful or offensive contact with a person, resulting from an act | (¡intended to cause the plaintiff to suffer such a contact. Griffith v. Young, 46,184 (La.App.2d Cir.04/13/11), 62 So.3d 856, 859. The defendant’s intention need not be malicious nor need it be an intention to inflict actual damage. Landry, supra. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other’s consent. Id. In order to prove a prima facie case in an action for damages allegedly caused by the tortious conduct of the defendant, the plaintiff must prove three things: fault, causation, and damages. Pinkins v. Cabes, 1998-1803 (La.App. 4th Cir.01/27/99), 728 So.2d 523, writ denied, 1999-1242 (La.07/18/99), 745 So.2d 32.
The expansion of pleadings by evidence introduced at trial is governed by La. C.C.P. art. 1154:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon *1236 motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. . The court may grant a 'continuance to enable the objecting party. to meet such evidence.
When the pleading in question is construed in, its entirety and with all other matters occurring during trial which relate to the pleading, and it is more reasonable than not to conclude that the adverse party received fair notice and was fairly informed of the pleading’s intended substantive result and |7procedure by which that result was intended to be accomplished, the pleading will be held to be legally effective and to satisfy the requirements of the Code of Civil Procedure which are raised in objection to the pleading. Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618, 623 (La.App. 2d Cir.1975); Smart Document Solutions, LLC v. Miller, 2007-670 (La.App. 3d Cir.10/31/07), 970 So.2d 49, 53, writ denied, 2008-0210 (La.03/28/08), 978 So.2d 308.
Raymo relies on Sledge v. Continental Cas. Co., 25,770 (La.App.2d Cir.06/24/94), 639 So.2d 805, to support her contention that Zimmerman’s petition should have been, amended in order to allow recovery under a theory of intentional tort. Reliance on this case is misplaced, as the issues in Sledge fundamentally differ from the case at hand. In Sledge, a father, who was tired, allowed his 15-year-old son to drive a vehicle. The father fell asleep in the passenger seat and the son fell asleep behind the wheel, causing a one-car accident in which the father died. The plaintiffs did not at any time seek to recover for the negligent acts of the father, i.e., there were no allegations made against the father. The plaintiffs only alleged negligence on the part of the son, who was driving. Therefore, expansion of the pleadings, even by an answer asserting an affirmative defense of comparative ⅛ fault, amended on the eve of trial, was improper because allowing expansion would be contrary to the policy of La. C.C.P. art. 1154. The father’s estate had no notice to prepare a defense, because fault of the father was never’ alleged.
The instant case is analogous to the pleading issues in Wilson v. Taco Bell of Am., Inc., 40,430 (La.App.2d Cir.12/21/05), 917 So.2d 1223, where a former employee brought an action against a former manager for sexual harassment. On appeal the manager argued he had been prejudiced by the expansion of the pleadings and “blind-sided” because the issue of battery 'was never raised until trial. While the plaintiff did not specifically plead the tort of battery in her petition, she did include allegations of unwanted sexual attention and an instance when the manager touched her thigh. These facts sufficiently supported the' plaintiffs claim of sexual harassment and allowed for recovery, even though the petition did not state a specific theory. Id., at 1226.
In Sledge, expansion- of the pleadings was improper because of a failure to allege any fault of a specific party. In Wilson, expansion of the pleadings was allowed, because the party at fault had notice of the facts alleged against him; a specific theory was not required under Louisiana’s fact-pleading system. Here, Zimmerman identified Raymo as the party *1237 at fault for her injuries and her petition is sufficient under the requirements of La. C.C.P. art. 891, because it alleges material facts , that, if proven, would warrant recovery. Those particular allegations were:
2.
On or about July 14, 2012, an accident occurred on the shoulder of Highway 84 W in Winn Parish, Louisiana involving a 2004 Monte Carlo automobile, owned and operated by plaintiff, DEVON R. ZIMMERMAN, and a Hummer vehicle owned by defendant, FUTURE EXPECTATIONS COMMUNITY CARE SERVICES, LLC, and operated by defendant, JOSHLAN RAYMO.
Jg?.. ■
Immediately prior to the occurrence of the collision, plaintiff, DEVON R. ZIMMERMAN, was stopped on the shoulder of the westbound Highway 84 put her vehicle in reverse and backed into plaintiffs vehicle, pushing her vehicle into a third vehicle. Defendant JOSHLAN RAYMO, then struck plaintiffs vehicle two (2) more times with her vehicle. ⅝ ⅝ ⅝
' 7.
As a result of this accident, plaintiff, DEVON R. ZIMMERMAN, sustained serious, painful and permanent bodily injuries. Plaintiff required medical treatment as a result of the injuries she sustained in this accident.
8.
Plaintiff, DEVON R. ZIMMERMAN, itemizes her damages in the following non-exclusive particulars, to-wit:
(A) Past, present and future medical expenses;
(B) Past, present and future pain and suffering;
(C) Past, present and future- mental pain and anguish;
(D) Permanent injuries and disabilities;
(E) Loss of wages and economic opportunity; and
(F) Loss of enjoyment of life.
Zimmerman has alleged the tortious conduct of Raymo caused the injuries she sustained. The fact that the petition specifically states negligence and does not mention the word “intentional” does not preclude her recovery under a theory of intentional tort, because a plaintiff is entitled to any relief under the pleadings and the evidence so long as the facts constituting the claim are alleged. The fact that Raymo rammed the Monte Carlo three times lends itself to proving intent and clearly placed Raymo on notice to defend against an intentional tort.
| inRaymo further argues that she was somehow prejudiced by the introduction of evidence of intent and improper enlargement of the pleadings. The purpose of the fact-pleading system in Louisiana is to avoid unfair prejudice by providing a system that ensures adequate notice of allegations and a fair opportunity to prepare a defense. See Smart Document Solutions, supra; Sledge, supra; and Robertson, supra. It is clear from the record, the trial court addressed the issue of Raymo’s intent at the time of the incident during the motions hearing held-about seven months previous to the trial:
The court is here today to make rulings on a motion in limine ... with respect to Item Number Four, the testimony regarding intent of the defendant at the time of the subject incident, I am going to allow certain testimony, uh, to be introduced in that regard, uh, probably come along with the just basically the facts of the case, and — and what happened and what was said and that kind of thing. I am not gonna allow' just *1238 anybody to be questioned, uh, on what they believe the state of mind of the defendant was at the time of the incident. But, within limits, I am going to allow certain testimony, uh, regarding intent. If we get to the trial and there is a question that counsel feels, uh, violates that, just raise your hand and I’ll stop and we’ll, uh, go in side bar ...
The trial court’s ruling on Zimmerman’s motion in limine was to allow evidence of Raymo’s intent at the time of the incident. Raymo had at least seven months’ notice that intent would likely be an issue raised at trial. In addition, Progressive’s answer to both petitions alleged that this was not an accident, giving Raymo sufficient notice of its plan to prove Raymo intentionally hit the Monte Carlo.
Raymo did not testify; instead, she asserted her 5th Amendment right against self-incrimination and was then dismissed.
| ^Lieutenant Westmoreland testified to his initial impressions of the scene and his incident report. He related that the Monte Carlo was heavily damaged. He stated that he interviewed all four parties at the scene and all reported the “ramming” was intentional. According to Lt. Westmoreland, Carter was the only person claiming to be injured, but Zimmerman had visible facial injuries.
Zimmerman testified that she was driving away from Winnfield on Hwy. 84, when Raymo’s Hummer came up quickly behind her, went onto the shoulder on the passenger side of her vehicle, and hit her, pushing her across the lane into oncoming traffic. Zimmerman stated that she pulled over onto the left shoulder, and Raymo parked in front of her. Once Raymo exited the Hummer, she punched Zimmerman in the eye with keys in her fist. Shortly after, Beverly Raymo pulled up behind the Monte Carlo, blocking it in. Zimmerman testified that everyone then returned to their vehicles, and she waited for Raymo to move the Hummer. Zimmerman stated the Hummer’s headlights were shining on her when suddenly the Hummer hit her car head on and both airbags deployed. The Monte Carlo was hit three times total.
At trial, Carter was read the statements he gave during a previous deposition. These statements followed the account of Zimmerman, but at trial Carter disagreed with most of them. He maintained only that the airbags exploded, he felt a hit twice, and then Raymo backed up and hit the passenger side of the Monte Carlo.
Beverly Raymo testified that her daughter called her, she found everyone on Hwy. 84, and she parked her vehicle behind Zimmerman. | ^Beverly testified that she did not see the impact, but heard it, and jumped into the grass with Zimmerman. According to Beverly the impact pushed the Monte Carlo into her vehicle. Beverly further testified that Raymo was arrested. On the night of the incident, Beverly gave a statement to Deputy Sapp of the Winn Parish Sheriffs Department, which she later changed after Raymo was released on bail.
According to Deputy Sapp, two days after the incident, Beverly changed her statement to clarify the fact that Zimmerman was not in the vehicle at the time-of impact. Deputy Sapp stated that Carter also came to the office to change his statement to say that he was the only one in the vehicle.
The jury, as the finder of fact, had the task of weighing the credibility of the witnesses. After considering the testimony and evidence presented, the jury concluded that: Zimmerman was in the vehicle at the time of impact; Raymo did intentionally ram the Monte Carlo; and, Zimmerman was injured due to Raymo’s actions. The record supports there is a reasonable, fac *1239 tual basis for these findings, and nothing in the record proves these findings clearly wrong. For these reasons, we find the jury did not err in determining Zimmerman met the burden of proof for liability, and the trial court did not err in denying Raymo’s motion for directed verdict on liability. Therefore, this assignment of error is without merit.

Causation

In her second assignment of error, Ray-mo alleges that Zimmerman failed to carry her burden of proof at trial regarding medical causation. | lsRaymo argues Zimmerman provided no professional medical testimony to prove causation and therefore, the trial court erred in allowing the presumption of causation set forth in Housley v. Cerise, 579 So.2d 973 (La.1991).
The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 1994-2603 (La.02/20/95), 650 So.2d 757; Byrnside v. Hutto, 47,685 (La.App.2d Cir.02/27/13), 110 So.3d 603, 607. To obtain the benefit of the presumption of causation described in Housley, supra, the plaintiff must show: (1) that he or she was in good health prior to the accident at issue; (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward; and, (3) through evidence, either medical, circumstantial or common knowledge, a reasonable possibility of causation between the accident and the claimed injury. Henderson v. Gregory, 47,086 (La.App.2d Cir.06/20/12), 93 So.3d 818, 820-21, writ denied, 2012-1695 (La.11/02/12), 99 So.3d 671. If the plaintiff can show these three elements, then he or she is entitled to a presumption of causation, and the burden of proof shifts to the defendant to prove some other particular incident could have caused the injury of which the plaintiff complains. Id. If the plaintiff cannot show these three elements, she is not entitled to a presumption of causation and the burden of proof does not shift to the defendant. Id. In order to defeat the presumption, a |udefendant must show some other particular incident could have caused the injury in question. Maranto, supra, at 761. The application of this presumption to the facts is a question of fact subject to manifest error review. Gober v. Walgreen Louisiana Co., 46,730 (La.App.2d Cir.11/02/11), 80 So.3d 9, 13, writ denied, 2011-2837 (La.03/02/12), 84 So.3d 531.
Zimmerman testified about her health before the incident, stating that she attended college, played sports, and did not have any previous injuries preventing her from enjoying a normal, healthy life. She entered certified medical records into evidence, showing injuries manifesting and continuing after the incident. The evidence required to obtain the benefit of Housley is “either medical, circumstantial, or common knowledge.” See Housley, supra; Byrnside, supra; and Henderson, supra. Under the circumstances presented here, Zimmerman’s testimony and certified medical records are the type of medical and circumstantial evidence through which any reasonable person could use common knowledge to find a possible connection between the alleged incident with Raymo and the claimed injuries that resulted. Therefore, the burden shifted to Raymo to provide evidence that she was not the cause of Zimmerman’s injuries.
We find no manifest error in the trial court’s decision to include the Housley presumption in the jury charge. Specifically, the trial court instructed the jury that Zimmerman was responsible for prov *1240 ing causation and damages by a reasonable preponderance and that mere possibility was not sufficient. Any reasonable juror in weighing the evidence and testimony presented could have found it more than merely possible that Zimmerman’s | ^injuries were caused by Raymo ramming her vehicle. It was entirely within the fact finder’s discretion to conclude that Zimmerman’s injuries resulted from the incident in the car and not from a fight between the two women. We will not disturb the discretion of the fact finder. This assignment of error is without merit.

Quantum of Damages

In her third assignment of error, Raymo argues that the jury award of $70,000.00 dollars for general damages is excessive. Those damages were listed as: physical pain and suffering; mental anguish, past and future; loss of enjoyment of life; and, physical impairment and disability. Zimmerman also appeals this award as abusively low.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve “mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.” Bellard v. American Cent Ins. Co., 2007-1335 (La.04/18/08), 980 So.2d 654. In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. LeBlanc v. Pynes, 46,393 (La.App.2d Cir.07/13/11), 69 So.3d 1273, 1283-84, writ denied, 2011-1792 (La.10/14/11), 74 So.3d 213.
| ifiThe role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. An appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. McCullin v. U.S. Agencies Cas. Ins. Co., 34,661 (La.App.2d Cir.05/09/01), 786 So.2d 269, 276. Only after finding that the trier of fact abused its great discretion may the appellate court resort to prior awards, and then only to determine the highest or lowest point reasonably within that discretion. Farmer v. Patrician SLP, L.L.C., 43,601 (La.App.2d Cir. 10/01/08), 997 So.2d 578, 581, writs denied, 2008-2606 (La.01/09/09), 998 So.2d 724, 2008-2613 (La.01/09/09) 998 So.2d 725. An abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Id.
Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompany an injury. McGee v. AC & S, Inc., 2005-1036 (La.07/10/06), 933 So.2d 770. The elements of physical pain and suffering and associated mental anguish are conceptually related and, to a large extent, overlapping; therefore, they are difficult to precisely distinguish. Smith v. Escalon, 48,129 (La.App.2d Cir.06/26/13), 117 So.3d 576, 581.
| ]7A1so included in general damages cán be an award for loss of enjoyment of life, which is conceptually distinct from other components of general damages, including pain and suffering. Loss *1241 of enjoyment of life, in comparison, refers to detrimental alterations of the person’s life or lifestyle or the person’s inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury. Miller v. Lammico, 2007-1352 (La.01/16/08), 973 So.2d 693. In contrast to pain and suffering, whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury. Id.
Prior to the incident, Zimmerman was in good physical and mental health with no injuries or ailments. She testified that she was enrolled at Grambling State University at the time of the incident, employed as a student worker, and completing a bachelor’s degree in business management. After the incident, Zimmerman no longer had transportation to get back and forth to school, lost her job, and could no longer participate in school athletics. According to her testimony, these facts, along with her physical pain, caused her to develop intense depression.
The photographs of the Monte Carlo after the incident depict a badly damaged vehicle. There was obvious impact on the passenger side and the front is almost completely smashed in. The Monte Carlo was so damaged it was towed from the scene and the insurer found it to be a total loss.
The medical records entered into evidence show that Zimmerman suffered various physical and mental injuries following the incident. She |1swas transported to Winn Parish Medical Center, where she was treated for injuries to her face, eye, back, knee, and leg. After this initial treatment, Zimmerman was treated by Dr. James Walker, an ophthalmologist, who prescribed medication for her eye injury and released her after only one appointment, as the injury would heal within four weeks. Zimmerman was also treated by Dr. Eubulus J. Kerr of the Spine Institute for cervical and lumbar spinal pain, bilateral knee pain, and pain in the left hand. After the initial visit, Dr. Kerr recommended physical therapy, an MRI, and prescribed medications for pain. The MRI results were normal. Zimmerman completed 11 physical therapy appointments over a 3 month period. Physical therapy reports indicate that she initially suffered from pain in joints of hand and lower leg, impaired posture, impaired muscle performance, impaired joint mobility, and impaired range of motion. Dr. Kerr diagnosed her with soft tissue injuries; he also noted mild left C6 and C7 neural foraminal narrowing and a minimal disk bulge at C5-6. Zimmerman’s last visit to Dr. Kerr was at the end of December 2012, after which she sought no further treatment for her physical injuries.
Zimmerman was also treated by Mary Darby, a psychiatrist, after the incident. Darby diagnosed Zimmerman with depression and post-traumatic stress disorder, which were attributable to the incident with Raymo. Darby’s reports were entered into evidence and reviewed by the jury. The reports indicate that Zimmerman was having trouble sleeping, was no longer eating, had lost a lot of weight, was experiencing nightmares related to the incident, and had general feelings that she was losing herself and no longer enjoying |19life. In November, Zimmerman sought treatment in the Natchitoches Parish Hospital for a possible suicide attempt brought on by depression and the use of Celexa. She was released the same day with directions to stop taking Celexa and was prescribed Zoloft. In mid-November, she discontinued treatment with Darby, but Darby reported that she was still in need of therapy.
*1242 The jury awarded Zimmerman the fol- the evidence presented at trial: lowing damages based on its evaluation of
• Past physical pain and suffering $20,000.00
• Future physical pain and suffering $0
• Past mental anguish $20,000.00
• Future mental anguish $10,000.00
• Loss of enjoyment of life $20,000.00
• Physical impairment and disability $0
From our review of the record we find the jury’s award of $70,000.00 in general damages is not excessive. Taken as a whole, the amount appears high, but the jury’s itemization under each category is not excessive, considering the entire record. Although Zimmerman suffered only minor physical injuries, those injuries still required medical treatment by several different medical providers and had a negative effect on her life and ability to function. Mental anguish overlaps with and is difficult to distinguish from physical pain, and it is clear that Zimmerman did suffer mental distress stemming from this incident.
| ^The particularly disturbing point in this case is the finding that this collision was not an accident, but was intentionally caused by Raymo. -The testimony and medical records show that Zimmerman did suffer detrimental alterations to her life and an inability to participate in the activities formerly enjoyed prior to the injury. We, therefore, find $70,000.00 is a reasonable amount for the injuries suffered by Zimmerman under these circumstances. This award is neither excessive nor abusively low, and there is no merit in the assignments of error by either Raymo or Zimmerman that the award should be amended.
Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Devon Zimmerman and against Joshlan Raymo is affirmed. All costs of this appeal are assessed to Raymo.
AFFIRMED
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, MOORE, LOLLEY and CALLOWAY, JJ.
Rehearing denied.