# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**BY CLARK, J.**:

2015-C -0536    JOSEPH E. BOUDREAUX, II v. JENNIFER BOUDREAUX    C/W    JENNIFER ANNE THERIOT BOUDREAUX v. JOSEPH ELTON BOUDREAUX, II (Parish of Terrebonne)

Accordingly, we reverse the court of appeal's judgment that sustained Jennifer's exception of no right of action and reverse the judgment that vacated the reduced child support order. REVERSED AND RENDERED.

KNOLL, J., dissents and assigns reasons.
HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0536

JOSEPH E. BOUDREAUX, II

VERSUS

JENNIFER BOUDREAUX

CONSOLIDATED WITH

JENNIFER ANNE THERIOT BOUDREAUX

VERSUS

JOSEPH ELTON BOUDREAUX, II

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

**CLARK, J.**

We granted this writ application to determine whether the court of appeal erred in its application of La. R.S. 46:236.1 *et seq.* After oral argument, we solicited responses to questions posed to the parties to assist in our understanding of the issues and procedures involved in this matter. All of the parties promptly complied with cogent reasons which aided this court in addressing the issues posed in this *res novo* matter with statewide implications. For the reasons that follow, we reverse the court of appeal's judgment in its entirety and render judgment in accord with the trial court's April 4, 2013 judgment.

## FACTS AND PROCEDURAL HISTORY

Joseph E. Boudreaux, II and Jennifer Boudreaux were married on June 13, 1997. Two children were born during their marriage. By judgment dated June 10, 2011, the parties divorced. On June 14, 2011, the parties entered into a consent judgment with regard to custody, visitation, and child support. Specifically, Joseph

was ordered to pay Jennifer child support in the amount of $1,200 per month for the relevant time period discussed herein.

On September 6, 2011, Joseph filed a rule to change custody and reduce child support. In the subsequent months, discovery was conducted, as well as a custody evaluation, and the trial court eventually heard the rules to modify custody and reduce support on March 19 and 20, 2012. The trial court signed a judgment that modified the custody arrangement but denied Joseph's motion to reduce the child support amount. Accordingly, Joseph was required to continue paying $1,200 a month to Jennifer.

On July 24, 2012, Joseph applied for services through the Department of Child and Family Services (hereinafter referred to as "DCFS"). Specifically, pursuant to Title 46, Joseph applied for support enforcement services available through the IV-D program[1], which allowed him to pay his support obligation directly to DCFS, who, as the new payee, would then tender the amount to Jennifer. In exchange for the services, he paid a twenty-five dollar registration fee, as well as a monthly administrative fee assessed by DCFS in the amount of five percent of his support obligation. This administrative fee was assessed in addition to his full support obligation.

Subsequently, DCFS issued a certification that enforcement services were being provided. Thereafter, the Terrebonne Parish District Attorney's Office, as the contract attorney for DCFS, filed an *ex parte* motion in the trial court to be recognized as the proper payee of the child support award in accordance with La. R.S. 46:236.2. The trial court granted the motion on August 13, 2012.

On September 5, 2012, Joseph filed a motion to reduce child support due to a "change in marital status."[2] Pursuant to La. R.S. 46:236.5 and 32nd Judicial District Court Rules 14A.1-14A.7, the motion was heard by a hearing officer

---

[1]  For a full explanation of the IV-D program, see page 11, *infra*.
[2]  Jennifer remarried in June 2012.

2

assigned to IV-D cases. The motion was served on both the Terrebonne Parish District Attorney and Jennifer, as the custodial parent. Jennifer filed an exception of no right of action, arguing DCFS had no right to intercede because the claim was not properly within the jurisdiction of IV-D categories over which a hearing officer has authority. In particular, she asserted that in order to invoke the services of DCFS, one must be receiving public benefits or delinquent in their child support payments. In making this argument, she relies on La. R.S. 46:236.1.2 and 42 U.S.C. § 654(B)(i)-(ii). Jennifer argues Joseph met neither statutory requirement. Moreover, Jennifer contended she, as payee, never sought enforcement services; thus, the requirement that DCFS must certify that support enforcement services are being furnished was not met.

The hearing officer denied Jennifer's exception of no right of action, and the hearing ensued. The hearing officer ultimately made a recommendation to the trial court to reduce Joseph's child support obligation from $1,200 per month to $700 per month.

Jennifer filed an objection to the hearing officer's recommendation with the trial court, therein renewing her exception of no right of action and also contesting the recommendation on the merits insofar as remarriage alone does not constitute a material change in circumstances to justify a reduction in child support.

The trial court, after a hearing in March 2013, accepted the hearing officer's recommendations. Jennifer appealed, arguing DCFS improperly intervened in the proceeding due to Joseph's ineligibility to apply for enforcement services. Additionally, Jennifer challenged the judgment on the merits on the basis that remarriage does not justify a modification of child support and, thus, the trial court erred in reducing the support obligation. The court of appeal reversed, holding Joseph did not meet the requirements of the IV-D program. As such, the court of appeal sustained Jennifer's exception of no right of action, vacated the trial court's

3

April 4, 2013 judgment, and reinstated the trial court's May 8, 2012 judgment. *Boudreaux v. Boudreaux*, 13-1149 (La. App. 1 Cir. 2/11/15), 170 So.3d 223.

Joseph filed the instant writ application, arguing the court of appeal improperly interpreted the provisions of La. R.S. 46:236.1 *et seq.* by disallowing him, as the payor parent, to seek the enforcement services of DCFS because he is neither delinquent nor receiving public assistance. We granted certiorari to determine the requirements to qualify for child support services through the IV-D program. *Boudreaux v. Boudreaux*, 15-536 (La. 6/30/15) _So.3d_.

## STANDARD OF REVIEW

The issue in this case involves the applicability and interpretation of La. R.S. 46:236.1.2 and La. R.S. 46:236.2. Thus, this case presents us with a question of law, which requires *de novo* review. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.,* 06–0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045. Applying this standard of review to the instant matter, we will determine whether a payor parent who is neither delinquent in his payments nor receiving public benefits, can still avail himself of the Title IV-D program.

## RELEVANT LAW AND ARGUMENTS

At issue is the availability of the IV-D child support enforcement program to a payor parent who applies for services despite having never received public assistance nor being delinquent in his support payments. La. R.S. 46:236.1.2, in pertinent part, provides:

A. The department is hereby authorized to develop and implement a program of family support in FITAP cases, Title IV-E Foster Care cases, Medicaid only cases, and any other category of cases to which the state is required by federal law or regulation to provide services, designed to do the following:

*(1) Enforce, collect, and distribute the support obligation owed by any person to his child or children and to his spouse or former spouse with whom the child is living if a support obligation has been established with respect to such spouse or former spouse.*

4

(2) Locate absent parents.

(3) Establish paternity.

(4) Obtain and modify family and child support orders.

(5) Obtain and modify medical support orders.

B. (1) In addition, as required by federal law, *the department shall provide the above services to any individual including absent or noncustodial parents not otherwise eligible for such services as provided for in Subsection A upon receiving an application from such individual and upon receiving any fee which may be assessed by the department for the services, regardless of whether the individual has ever received public assistance and regardless of whether there is a delinquency.*

(Emphasis added.) Additionally, La. R.S. 46:236.2 provides:

A. (1) The department or district attorney may, by a written motion together with a written certification from the department that support enforcement services are being furnished to the individual, to the current caretaker of any individual receiving support benefits, *or to the payor of any support benefits for such individual*, obtain an order to require any person under an order to support such individual or caretaker to make such support payments payable to the department.

\*\*\*

C. In either of the above cases, the court shall grant its order ex parte and without hearing any adverse party.

D. *This Section applies regardless of whether the individual applying for or receiving support enforcement services has ever received any public assistance and regardless of whether there is a delinquency.*

(Emphasis added.)

Joseph argues these statutes provide the authority for him to apply for and receive the services of the IV-D program in exchange for his payment of a fee assessed by DCFS. He contends the plain language of the statute renders him a proper applicant even though he has never "received public assistance" and there is no "delinquency." La. R.S. 46:236.2(D). The latter provision was added by statutory amendment in 1999 to remove the prerequisites of public assistance and

5

delinquency. Acts 1999, No.1089 amended La. R.S. 46:236.2(D). Accordingly, he argues the presence (or absence) of either status is irrelevant to the analysis of his eligibility.

Further, Joseph contends the fact that he shares custody of his children, and is thereby precluded from qualifying as an absent or noncustodial parent, is not dispositive. La. R.S. 46:236.1.2(B) establishes that services shall be provided by the State to *any individual*; the reference to absent or noncustodial parents is only illustrative, as evidenced by the preceding word "including." Thus, he argues, the statute clearly allows him to apply for and receive IV-D child support services.

Contrarily, Jennifer avers the statutes "must be read in relation to each other as to their purposes and in accordance with legislative intent." To this end, she points to the history behind the federal program. Congress enacted Title IV-D of the Social Security Act, 42 USC § 651 *et seq*., entitled Child Support and Establishment of Paternity, with the primary intent of aiding needy families of absent parents by assisting them with the collection of support payments and by providing the enforcement services associated therewith. Jennifer notes the Louisiana child support enforcement statutes, La. R.S. 46:236.1 *et seq*., were enacted by federal mandate under this program. Specifically, 42 USC § 651, the federal authorizing statute, provides that appropriations of federal money to the states under this act are:

> For the purpose *of enforcing* the support obligations owed by *noncustodial* parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, *obtaining* child and spousal support, and *assuring that assistance* in obtaining support will be available under this part to all children (whether or not eligible for assistance under a state program funded under part A of this subchapter) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

(Emphasis added.)

Accordingly, Jennifer contends that allowing a civil obligor who is not delinquent, not in need of public assistance, and not an absent parent, to invoke the aid of the state is counter to the intent of both Congress and the Louisiana legislature. She accuses Joseph of applying for the state program only as a means by which to forum shop insofar as the statutory scheme allows for the appointment of a hearing officer in a parallel, *ex parte* proceeding. If his motive for utilizing the state's services was truly to avoid conflict in the delivery of payments due to their acrimonious divorce, Jennifer contends Joseph could proceed under the collection and disbursement arm of the law as established in La. R.S. 46:236.11. Additionally, Jennifer avers the manner in which Joseph attempts to utilize the state enforcement procedure forces her to involuntarily assign her rights to DCFS and divests her of a voice in her own domestic proceedings.

Last, Jennifer argues DCFS did not have the proper certification required by La. R.S. 46:236.2(A)(1) to authorize an amendment of the trial court's child support order. Particularly, the statute requires a "written motion together with a written certification from [DCFS] that support enforcement services are being furnished to the individual, to the current caretaker of any individual receiving support benefits, or to the payor of any support benefits for such individual." The certification provided by DCFS stated, "support enforcement services are being provided under La.R.S. 46:236.1 *et seq.* to Jennifer Boudreaux [who] is receiving support benefits." Jennifer asserts that the statement is facially defective because she has not sought or received support enforcement services now or in the past. Joseph rebuts this position by arguing DCFS did not intentionally mislead the court in making its certification. Instead, the admittedly awkward and inarticulate grammar used in the certification was merely a result of the unusual posture of this case, wherein DCFS had to alter its typical certification to show that in the present case, the payor parent (instead of the custodial/payee parent) applied for and

7

received the support enforcement services and that the ultimate recipient of the support benefits is the custodial parent, Jennifer. In response, Jennifer contends that even if the wording could simply be excused as poor sentence construction, it is improper to certify that *anyone* in the family is receiving support enforcement services since no one is using public assistance, welfare or otherwise. There was simply no support order already in existence within the program to amend. Under either argument, she maintains that the certification required as a prerequisite to amending a support order is invalid.

## DISCUSSION

*Statutory Interpretation*

After carefully reviewing the relevant law and the parties' arguments, we find Joseph acted within his rights to apply for support services through DCFS. First, we recognize that historically and typically, the payee is the applicant and/or receiver of IV-D services. However, we find nothing in the statutes that prevents a payor parent from applying for these services. Rather, the plain language of La. R.S. 46:236.2(A), as amended by Acts 1999, No. 1089, clearly allows a *payor* of child support benefits to receive support enforcement services:

> [DCFS], by a written motion together with a written certification from the department *that support enforcement services are being furnished to the individual*, to the current caretaker of any individual receiving support benefits, *or to the payor of any support benefits for such individual*, obtain an order to require any person under an order to support such individual or caretaker to make such support payments payable to the department.

(Emphasis added).

The conclusion reached by Jennifer and the court of appeal suggests that they improperly inserted the word "payee" where "individual" is used. Perhaps in doing so, they confused the recipient of "support benefits" (*i.e.,* Jennifer receiving monthly child support payments from Joseph) with the recipient of "support enforcement services" (*i.e.,* Joseph receiving the benefits of the IV-D program

from DCFS). However, this flawed interpretation would result in the statute only allowing the payee to receive services, which would render meaningless the amendment that expressly added "payor" to the class of persons allowed to receive services. "Support services" and "support enforcement services" are clearly defined in La. R.S. 46:236.1.1(14) as:

> any action taken by [DCFS], upon receipt of an application or referral for services or a request made under the Uniform Interstate Family Support Act, in accordance with the federal requirements of Title IV-D of the Social Security Act and corresponding state law and regulations without regard to whether there is any existing court order, delinquency, or presumption of paternity.

Thus, it is evident that the statute is referring to action taken by DCFS in the form of providing services---not action taken by Joseph in the form of paying his monthly child support obligations. This definition also makes clear that an existing court order within the program, or elsewhere, is immaterial. Thus, there is no merit to Jennifer's argument that "payor" only applies when an order in accordance with the program is pre-existing.

Next, we address the argument that insists that one cannot apply for support enforcement services within the IV-D program without having received public assistance or without being delinquent. Prior to statutory amendments that became effective in 1999, accepting public assistance and delinquency were indeed hurdles to clear before becoming eligible for the support enforcement program. However, as noted by Joseph, the legislature amended section D of La. R.S. 46:236.2 to explicitly remove these two requirements. Namely, the amended statute clarifies that the section pertaining to the amendment of judgments applies "regardless of whether the individual applying for or receiving benefits has ever received any public assistance and regardless of whether there is a delinquency."

Moreover, in 2003, by Act 2003, No. 1068, La. R.S. 46:236.1.2(B) was amended to mirror the language used in La. R.S. 46:236.2(D). Namely, the

9

legislature reinforced the provision that made public assistance and delinquency inconsequential to whether a person can apply for services:

> . . . the department shall provide the services listed in La. R.S. 46:236.1.2(A) to any individual including absent or non-custodial parents not otherwise eligible for such services as provided for in Subsection A upon receiving an application from such individual and upon receiving any fee which may be assessed by the department for the services, *regardless of whether the individual has ever received public assistance and regardless of whether there is a delinquency.*

La. R.S. 46:236.1.2 (emphasis added.) Accordingly, the inapplicability of either status to Joseph does not act as an impediment to his qualification for the program.

Further, La. R.S. 46:236.2 was amended to broaden access to the IV-D program by encompassing non-custodial payor parents, rather than the previously restrictive law that solely allowed the custodial parents to apply for an order to make support payments to DCFS. Acts 1999, No. 762. Jennifer argues that because Joseph shares custody and cannot classify as an "absent" or "non-custodial" parent, he is not within the statutorily authorized group of person who can apply for and receive enforcement services. However, it is illogical to conclude that a statute that requires DCFS to provide services to "*any individual, including absent or noncustodial parents*" means only absent or noncustodial parents are included. La. R.S. 46:236.1.2(B). Clearly, the statute is inclusive of "any individual" and the statutory scheme was amended to expressly extend the classification, not limit it. The end result of the 1999 and 2003 amendments was to encompass all persons, whether payee or payor, custodial or non-custodial, delinquent or compliant, within the class of those eligible to apply for and receive IV-D services.

We find the law to be clear and unambiguous that a payor of child support is allowed to apply for support enforcement services, pay an administrative fee assessed by DCFS, and receive the benefits of the services without regard to public assistance, delinquency, or custodial rights. "When a law is clear and

unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. We find no absurd consequences by allowing the payor parent to deplete his own patrimony by virtue of paying a monthly fee in exchange for designating DCFS as the proper payee of the support obligations.[3] Instead, we adopt with favor the policy arguments made by Joseph:

> Allowing payors to pay support into the system facilitates the flow of support to children. It reduces the contact between former partners and reduces potential conflict that can be harmful to the children. It provides a way for the State to automatically monitor income and to bring rules to modify on its own should it observe a substantial increase in income warranting an increase in support. It also facilitates the payment of arrears on back due support.

Having found the law permits Joseph to proceed as he did under the IV-D program, we nevertheless address each of Jennifer's concerns for purposes of a complete review and as fairness dictates. First, Jennifer relies heavily on the congressional intent in enacting Title IV-D, arguing that its specific purpose of benefiting families of absent parents and assisting in the collection and enforcement of child support is not being furthered by allowing a financially stable, custodial parent to employ the services of DCFS. To fully understand the origin of Louisiana's child support enforcement program, we must look at the national child support program.

In 1975, Congress enacted the Child Support Enforcement and Paternity Establishment Program, which amended Title IV-D of the Social Security Act, 42 U.S.C. § 651, *et seq.* to authorize funding to assist in the collection of child support, among other goals. By federal mandate, each state is required to have a program for child support enforcement, which is overseen by the federal Office of Child Support Enforcement (hereinafter referred to as the "OCSE"). Minimal

---

[3] We note the payment of such a fee in no way diminishes the amount owed on the underlying child support obligation.

standards for state programs are established by the OCSE to ensure the effectiveness of the program. 42 U.S.C. § 652(a)(1). State IV-D programs must provide services to any child who receives services under Title IV-A, IV-E, or XIX of the Social Security Act and "any other child, if an individual applies for such services with respect to the child." 42 U.S.C. § 654(4)(A)(ii). Pursuant to this federal mandate, Louisiana enacted La. R.S. 46:236.1 *et seq.* to establish a state child support enforcement program. Federal funding for state welfare programs, including IV-D and Temporary Assistance for Needy Families, are dependent upon compliance with the federal mandate that each State must operate a child support enforcement program and follow the regulations therein. 42 U.S.C. § 602(a)(2).

In creating the federal IV-D program, the primary purpose was to assist in the collection of child support and to provide aid to families with dependent children. We concede that the program's origins are rooted deeply within the context of providing welfare to needy families and, typically, involve assisting the payee in collecting owed child support. However, the federal mandates of 42 U.S.C. § 651 *et seq.* impose *minimal* requirements upon the state programs; nothing therein precludes the states from expanding their enforcement services beyond those minimal standards. Moreover, language in the federal program itself appears to authorize providing services to any individual who applies. (*See* 42 U.S.C. § 654(4)(A)(ii), quoted *supra,* and 45 C.F.R. § 302.22(a)(1)(i), which requires that IV-D programs provide services to "any individual who . . . files an application for the services with the IV-D agency.") In any event, because we find Louisiana's statutory scheme unambiguously gives rights to the payor parent, as well as the payee parent, we do not find the spirit upon which the IV-D program was founded stands in the way of a broader application thereof. Further, since federal grants are contingent upon compliance with the state statute, a failure to abide by the clear provisions of La. R.S. 46:236.1 *et seq.* could jeopardize the

viability of the child support program as a whole in Louisiana. Thus, we find no basis grounded in history or policy to support Jennifer's position.

Next, Jennifer takes issue with the certification by DCFS. As noted above, before an amendment of a child support order can be authorized, La. R.S. 46:236.2(A)(1) requires "a written motion together with a written certification from [DCFS] that support enforcement services are being furnished . . ." We have already concluded that a payor can be the recipient of the support enforcement services, so we do not need to dispose of that argument again here. However, we will address Jennifer's contention that the certification was improper on its face insofar as it certified that enforcement services were being provided *to Jennifer* [who] is receiving support benefits. She argues that she neither applied for nor received support enforcement services; thus, the certification is invalid. Without a valid guarantee by DCFS, Jennifer argues no amendment to a support order can be granted.

We find this argument to be hyper-technical, and we refuse to base the correctness of an application on a game of semantics. It is clear that the unusual context of this case, wherein the payor parent is applying for services, required a modification of the form that is more frequently employed by DCFS. Our review of the certification leaves no doubt that it was Joseph who applied for the enforcement services and is, therefore, the recipient of such services but that it is Jennifer who is receiving the child support benefits as the custodial parent. A slight misnomer does not change the fact that DCFS certified that a "payor of support benefits" is being "furnished" enforcement services as contemplated by the statute. Accordingly, this argument lacks merit.

Jennifer also maintains that Joseph could have utilized the collection/disbursement function of the law without having to use the enforcement services, if his goal really was to avoid acrimonious situations in delivery of the

support funds. She relies on La. R.S. 46:236.11:

> A. The secretary of the Department of Children and Family Services shall create a state disbursement unit for collection and disbursement of child support.
>
> B. (1) This unit shall collect and disburse child support payments in cases being enforced by the state pursuant to this Subpart and 42 U.S.C. 654(4), and all child support orders as provided in R.S. 9:303. *All applicable payments shall be sent directly to such unit by employers and payers.*
>
> (2) The provisions of this Section shall apply to child support payments made through any court. Any such court may enter into a cooperative agreement with the secretary of the Department of Children and Family Services to authorize the department to collect those support payments and administrative costs collected and distributed by the court pursuant to R.S. 46:236.5(B). The department may retain an amount equal to the actual costs incurred in collecting and distributing the child support, including administrative costs. However, such amount shall not exceed one percent of the total amount collected for the court. The department shall distribute such amounts collected pursuant to this Subsection in accordance with federal regulations.
>
> ***
>
> C. The Department of Children and Family Services support enforcement program, office of children and family services, shall administer the state disbursement unit. The support enforcement program may contract for the provision of these services in accordance with the applicable provisions of Chapter 17 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950 and the Louisiana Procurement Code.

(Emphasis added).

We note that La. R.S. 9:303 requires the state disbursement unit (through DCFS) to collect and distribute all child support payments made pursuant to an income assignment (non IV-D cases). Utilizing this provision is, indeed, different from Joseph's participation in the IV-D program. Nonetheless, we find that, because Joseph properly proceeded under the enforcement statutes of the IV-D program, any discussion of the existence of alternative means by which he could

14

have or should have proceeded is irrelevant. Accordingly, we find nothing dispositive of the overall issue in Jennifer's argument that Joseph should have opted for an alternative method of paying child support.

Jennifer also urges that allowing Joseph to employ the enforcement services to amend his child support order amounted to forum shopping and, as a matter of policy, should be forbidden. La. R.S. 46:256.5 provides, in pertinent part:

> C. An expedited process for the establishment of paternity and the establishment and enforcement of support and other related family and domestic matters in district courts using hearing officers may be implemented as follows:
>
> (1) The judge or judges of the appropriate court or courts for the establishment of paternity or the establishment and enforcement of support and other domestic and family matters may appoint one or more hearing officers to hear paternity, support, and other domestic and family related matters
>
> ***
>
> (3) The hearing officer shall act as a finder of fact and shall make written recommendations to the court concerning any domestic and family matters as set forth by local court rule, including but not limited to the following matters:
>
> (a) Hear and make recommendations on establishment and modification of child and spousal support, child custody and visitation.
>
> ***
>
> (6) A copy of any written recommendations, orders, or uncontested judgments rendered by the hearing officer shall be provided to the parties and their counsel at the time of the hearing officer's ruling, if present. Any party who disagrees with a judgment or ruling of a hearing officer on a matter set forth in Paragraph (3) may file a written objection to the findings of fact or law of the hearing officer within the time and manner established by court rule. *The objection shall be heard by the judge of the district court to whom the case is assigned. Upon filing of the objection, the court shall schedule a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer. If the judge in his discretion determines that additional information is needed, he may receive evidence at the hearing or remand the proceeding to the hearing officer.*

(Emphasis added).

The Thirty-Second Judicial District Court Rules mirror these provisions, giving the authority to hearing officers to issue both a recommendation on a modification of a child support order in cases where support enforcement services are provided by DCFS and the authority to the trial court to accept, reject, or modify the hearing officer's recommendation upon the filing of a written opposition. See La. Dist. Ct. R. 35, 32nd JDC, Rules 14A.1, 14A.3, and 14A.4. Because the trial court is not required to defer to or accept the hearing officer's recommendations and can receive evidence beyond what the hearing officer heard, we find *de novo* review is afforded. Moreover, the case returns to the original allotted judge. In this very case, the same judge who presided over the original child support proceeding conducted the contradictory hearing upon the filing of the exception to the hearing officer's findings. Accordingly, Joseph found himself in the same forum, before the same judge, thereby defeating any claim that he was forum shopping.

Next, Jennifer argues the statute, as employed by Joseph, deprives her of a voice in these proceedings. She contends that by virtue of DCFS becoming a party to the proceeding, she is forced to involuntarily assign her rights. We disagree. We find the manner in which Joseph utilized the statute is not only procedurally proper, it did not operate to divest Jennifer of her rights to participate in the child support proceedings. Rather, she retains all rights to participate if she so chooses. The only right that is affected is her right to directly collect the payment remitted by the payor, Joseph, inasmuch as the statutes make DCFS the proper payee. La. R.S. 46:236.2. La. R.S. 46:236.1.5 describes the assignment of rights that occurs once DCFS becomes a party in FITAP cases, but the instant case does not involve FITAP benefits; thus any discussion of the assignment of rights based thereon is misplaced.

16

Thus, a clear reading of these laws reveal that the payee parent assigns only the rights to directly collect the support payments---*not* the rights to file a motion to increase support, object in support proceedings, present evidence, etc.

Moreover, La. R.S. 236.1.9 states:

> A.    The agencies, courts, and persons in Louisiana carrying out provisions of this Subpart and of Title IV-D of the Social Security Act and related portions of Title IV-A of such Act *shall have the affirmative responsibility to act in the best interest of the individual on whose behalf action is taken.*
>
> ***
>
> C. *The department shall be an indispensable party* to any proceeding involving a support obligation or arrearages owed under this Subpart.

(Emphasis added).

This statute specifies that DCFS is acting on behalf of the best interest of the child and is an indispensable party to any proceeding involving child support. This means that no action can be taken without DCFS's participation, but it does not take away any rights of either parent. Further, La. R.S. 46:236.1.7(B) clarifies that no attorney-client relationship exists between the District Attorney (as the contracted attorney for DCFS) and either parent:

> B. Any attorney initiating legal proceedings pursuant to this Subpart and Titles IV-D and IV-A of the Social Security Act shall represent the state of Louisiana, Department of Children and Family Services exclusively. *An attorney-client relationship shall not exist between the attorney and any applicant or recipient of child support enforcement services for and on behalf of a child or children*, without regard to the name in which legal proceedings are initiated. In those cases in which the Department of Children and Family Services is providing child support services, the attorney representing the department shall not represent any party in matters involving custody or visitation. The provisions of this Subsection shall apply to a staff attorney in the child support enforcement section of the Department of Children and Family Services, district attorney, or contract attorney providing support services pursuant to Title IV-D.

(Emphasis added).

Thus, the attorney for DCFS does not represent either parent; rather, he represents the best interest of the child. By implication, then, if not facially evident, the parents still retain their rights to participate on their own behalf.

Additionally, La.R.S. 46:236.1.2D(1) expressly creates a *separate and distinct* cause of action in favor of DCFS if DCFS wishes to modify a support order on behalf of the child. Thus, the legislature explicitly gave DCFS an independent cause of action and chose to leave undisturbed the rights of the parents. Moreover, the language of the child support guidelines support this holding. La. R.S. 9:311 states:

> A. (1) An award for support shall not be modified unless *the party* seeking the modification shows a material change in circumstances of *one of the parties* between the time of the previous award and the time of the rule for modification of the award.
>
> ***
>
> C. For purposes of this Section, in cases *where the Department of Children and Family Services is providing support enforcement services . . .*
>
> (2) *Upon request of either party or on its own initiative* and if the best interest of the child so requires, the department shall provide for judicial review, and if appropriate, the court may adjust the amount of the existing child support award every three years if the existing award differs from the amount which would otherwise be awarded under the application of the child support guidelines. The review provided hereby does not require a showing of a material change in circumstance nor preclude a party from seeking a reduction or increase under the other provisions of this Section.

(Emphasis added).

The legislature's use of "the party" and "one of the parties" in Subsection A(1) and "either party" in Subsection C(2) shows a clear intent to maintain the rights of at least three parties, namely: the two parents and DCFS. Thus, in order to reconcile La. R.S. 9:311 with the IV-D laws, the statutes must be interpreted as no parent losing standing.

Based on the foregoing, there is no positive statutory language that strips either parent of their rights to participate in support matters. Indeed, the facts of this

18

very case belie Jennifer's position that she was deprived of her rights: she was served with the motion to reduce support, and her attorney was present at both the hearing before the hearing officer and the subsequent hearing by the trial court. Jennifer's attorney objected to several rulings (no right of action, expansion of the pleadings, forum shopping), as well as to the ultimate recommendation of the hearing officer. Additionally, she was given the opportunity to put on evidence at the *de novo* hearing before the trial court but, admittedly, chose not to. She also conceded she has not actually tried to file a motion to increase support during the pendency of this appeal, and we find nothing would prevent her from doing so, as either a direct party or an intervenor. Accordingly, we find no merit to the suggestion that the payee parent loses any rights she had before the case came into the IV-D program. Rather, it appears she gains rights, in the sense that she now has the benefit of two attorneys: her own and DCFS, who is working on behalf of the best interest of the child and who has the authority to ensure Joseph's payments are timely made and for the appropriate amount. Thus, Joseph's voluntary participation in the IV-D program and DCFS's intervention as a result thereof, still affords Jennifer her day in court and guarantees her right to be heard.

*Reduction of Child Support*

Having determined that La. R.S. 46:236.1 *et seq.* allows a payor parent, who is neither delinquent nor in need of public aid, to apply for and receive support enforcement services, we turn now to the merits of the motion to amend the child support order. Joseph filed a Motion for Reduction/Termination in Child Support, checking off the following reasons to reduce payment: "order changing custody or visitation"[4] and "other/change in marital status." The hearing officer requested that the parties submit memoranda regarding what constitutes a material change in circumstances so as to justify a modification of child support. The parties

---

[4] This alleged change in circumstances appears to have been inadvertently included in the motion, or at the very least, has been abandoned. Nonetheless, it is not relevant to the discussion herein.

submitted the requested materials. Additionally, both parties testified, and multiple financial documents were introduced into evidence. Ultimately, the hearing officer recommended a decrease in child support from $1,200/month to $700/month. Jennifer filed an Objection to the Recommendation of the hearing officer. Accordingly, the matter proceeded to the original trial court judge for a *de novo* hearing, wherein no new evidence was submitted. The trial court denied Jennifer's Objection to the Recommendation and adopted the Recommendation of the hearing officer.

Jennifer contended below, and reasserts herein, that Joseph only pled "remarriage" as a ground for modification, and remarriage alone does not constitute a material change in circumstances for purposes of justifying a modification of child support. To the extent other grounds were considered by the hearing officer and trial court, she objects to an expansion of the pleadings.

Our review of the record reveals the hearing officer and trial court did not base their decisions on remarriage alone. The hearing officer's recommendation was expressly based on a decrease of income for Joseph, substantial decrease in the children's expenses, and the fact that applying the child support guidelines would result in at least a 25% change in the existing child support order. Additionally, the hearing officer noted the "voluntary underemployment" of Jennifer, and made a factual finding of the current incomes of both parties based on their testimony and exhibits. Also, the trial court, in its *de novo* review of the motion to reduce, indicated that its ruling was based on allegations and findings beyond remarriage. Thus, we find the modification of the support award was not based on remarriage.

Jennifer further argues that if remarriage was not the ground upon which the court reduced support, there is nevertheless error in the impermissible expansion of the pleadings. We agree with the trial court, however, that Joseph properly put Jennifer on notice that he was alleging a material change in circumstances beyond

remarriage. The motion itself cites to the provision of La. R.S. 9:311, which states, in pertinent part:

> A.(1) An award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award.
>
> (2) The Department of Children and Family Services shall prepare and distribute information, forms, and rules for the modification of support orders, in accordance with this Subsection, and for proceeding *in forma pauperis*. The information provided by the Department of Children and Family Services shall specifically include what may constitute a material change in circumstances. The clerks of court in all parishes shall make this information available to the public upon request. When the initial support order is entered, either the court or the department, if providing services, shall provide this information to the parties.
>
> B. A judgment for past due support shall not of itself constitute a material change in circumstances of the obligor sufficient to reduce an existing award of support.
>
> C. For purposes of this Section, in cases where the Department of Children and Family Services is providing support enforcement services:
>
> (1) A material change in circumstance exists when a strict application of the child support guidelines, Part I-A of this Chapter, would result in at least a twenty-five percent change in the existing child support award. A material change in circumstance does not exist under this Paragraph if the amount of the award was the result of the court's deviating from the guidelines pursuant to R.S. 9:315.1 and there has not been a material change in the circumstances which warranted the deviation.

A review of the motion makes it clear that Joseph filled out a pre-prepared form, in accordance with La. R.S. 9:311(A)(2). He cited to a "change in marital status" within the limited space on the form. We find it obvious that Joseph intended to show reduction in support was appropriate based on circumstances surrounding the remarriage, including changes in income, expense-sharing, etc. To adopt Jennifer's argument and narrowly construe the pleading---one which is necessarily limited by the nature of the pre-printed form---ignores the spirit of the law. Moreover, we note Jennifer herself subpoenaed multiple financial documents of Joseph for this hearing in order to establish his current financial position. To

this end, the trial court asked Jennifer's attorney:

> Let's suppose that y'all came in my courtroom, and you came up and you said, you want to change it.  And you say, she got remarried; and you sit down.  That, in and of itself, is not a change in circumstance.  But you say, well, she got married and he is making $285,000.00  and he is paying for some of the kids' food and stuff; then that would be a material change in circumstances, right?

Jennifer's attorney answered, "Yes, if there was some allegations to that effect - - which there weren't."  The trial court, in response to Jennifer's strict reading of the pleadings, stated:

> Certainly—certainly when it was filed and they said that she was remarried, you knew where they were coming from.  You knew what to expect, and it is not like you are blindsided by—oh well, I didn't realize y'all were going to bring this up.

We have previously stated harsh rules of pleading are not favored in this state. *State, Dept. of Children and Family Service ex rel. A.L. v. Lowrie*, 14-1025, p.5 (La. 5/5/15), 167 So.3d 573, 578. Furthermore:

> [w]hen the pleading in question is construed in its entirety and with all other matters occurring during trial which relate to the pleading, and it is more reasonable than not to conclude that the adverse party received fair notice and was fairly informed of the pleading's intended substantive result and procedure by which that result was intended to be accomplished, the pleading will be held to be legally effective and to satisfy the requirements of the Code of Civil Procedure which are raised in objection to the pleading.

*Zimmerman v. Progressive Sec. Ins. Co.,* 49,982 (La. App. 2 Cir. 8/12/15), _So.3d_.

The trial court specifically found that the motion filed by Joseph to reduce child support sufficiently put Jennifer on notice that he intended to prove a material change in circumstances existed beyond the mere fact of remarriage.  Also, we note Jennifer's act of subpoenaing financial documents to establish Joseph's income precludes Jennifer from advancing any claim of surprise attack.  Thus, we find no support for Jennifer's argument.

22

Jennifer did not challenge the merits of the ruling but only the manner in which the motion was pled. Because we find the hearing officer and the trial court properly considered evidence beyond the sole fact of remarriage, we do not need to address, under a manifest error standard, whether the trial court erred in reducing the child support.

## CONCLUSION

For the reasons articulated herein, we find Joseph acted within his statutory authority to apply for and receive enforcement support services pursuant to La. R.S. 46:236.1 *et seq.* Thus, the *ex parte* order making DCFS the new payee was proper. Additionally, we find the hearing officer and trial court correctly based the order to reduce child support on evidence beyond the sole fact of Jennifer's remarriage. Accordingly, we reverse the court of appeal's judgment that sustained Jennifer's exception of no right of action and reverse the judgment that vacated the reduced child support order.

**REVERSED AND RENDERED.**

SUPREME COURT OF LOUISIANA

NO. 2015-C-0536

JOSEPH E. BOUDREAUX, II

VERSUS

JENNIFER BOUDREAUX

CONSOLIDATED WITH

JENNIFER ANNE THERIOT BOUDREAUX

VERSUS

JOSEPH ELTON BOUDREAUX, II

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

**KNOLL, J., dissents.**

I respectfully dissent and would affirm the Court of Appeal's holding, as I find Louisiana law, La. R.S. § 46:236.1, *et seq.,* and the corresponding federal Title IV-D, 42 U.S.C. § 651 *et seq*., were not designed to provide the payor parent an additional forum to seek reduction in child support where the services of the Department of Child and Family Services (DCFS) have not been previously sought. As conceded by the majority, the federal IV-D program was created within the context of providing welfare to needy families and assisting the payee in collecting owed child support. 42 U.S.C. § 651 provides authorization of federal appropriations for state programs as follows:

> For the purpose of *enforcing the support obligations owed by noncustodial parents* to their children and the spouse (or former spouse) with whom such children are living … *obtaining* child and spousal support, and *assuring that assistance in obtaining support* will be available to *all children* (whether or not eligible for a state program funded under part A of this subchapter) for whom such assistance is requested…

*Id.*

Likewise, Louisiana's relevant statutes are contained under a Subpart entitled "Child Support **Enforcement**," a title which connotes *compelling* compliance with child support laws where necessary (emphasis added). La. R.S. § 46:236.1. The plaintiff correctly notes Louisiana's authorizing statute contains a provision with broad language which, if read by itself, suggests any individual may apply for services with the State. La. R.S. § 46:236.1.2 (*"In addition*, **as required by federal law**, **the department shall provide the above services to any individual** including absent or noncustodial parents not otherwise eligible for such services as provided for in Subsection A upon receiving an application from such individual…). However, considering the Subpart's title, when read *in pari materia* with La. R.S § 46:236.2, it is apparent there was no intention on the part of the Legislature to require this welfare program be extended to civil obligors like Joseph Boudreaux as a chance to forum shop.

La. R.S. § 46:236.2, entitled "Amendment of Support Orders," provides in pertinent part:

> A. (1) The department or district attorney may, by a written motion together with a written certification from the department **that support enforcement services *are being furnished* to the individual**, to the current caretaker of any individual receiving support benefits, or to the payor of any support benefits for such individual, obtain an order to require any person under an order to support such individual or caretaker to make such support payments payable to the department.

> *Id.*

The majority points out the Legislature's addition of the phrase "or to the payor of any support benefits for such individual" in 1999 in support of its holding. However, there is no indication this language allows an obligor such as Mr. Boudreaux to unilaterally seek the Department's intervention for the purposes of amending a District Court judge's child support order where the Department has played no prior role. Although the majority finds this to be a "flawed interpretation" rendering meaningless the amendment expressly adding "payor," I

strongly disagree. Rather I find that, by adding "payor of any support benefits to such individual," this language clearly allows the payor to seek an *amendment* to the order in cases where DCFS's support enforcement services *are already being utilized.* As this provision previously did not allow the payor to seek an amendment to the support order, this change in the law has meaning even if it does not apply in Mr. Boudreaux's case.

Far from being "hyper-technical" as asserted by the majority, the requirement that DCFS or the District Attorney certify support enforcement services **are being furnished** functions to prevent exactly the situation before us, in which the DCFS is utilized in a forum-shopping effort not in the best interest of the child. If, as the majority suggests, support enforcement services "**are being furnished**" by definition <u>anytime</u> DCFS or the District Attorney intervenes at a party's request, then the certification is meaningless. The Court of Appeal correctly noted the State was providing **no support enforcement services** to assist Ms. Boudreaux or to otherwise enforce Mr. Boudreaux's child support obligation prior to Mr. Boudreaux's application to the DFCS.

In reaching its holding, the Court of Appeal relied on a Third Circuit decision which found a mere certification of provision of support enforcement services, if in error, does not give the DCFS the right to intervene in child support proceedings. *Barnes v. Barnes,* 07-0027 (La. App. 3 Cir. 5/2/07), 957 So.2d 251. As explained above, the certification is a meaningful prerequisite for the State's intervention in this case, absent which the State's intervention is not appropriate. Thus, the lower court correctly found DCFS "has no legitimate interest in intervening in this action to amend an order of support so that payments are made through the State."

Mr. Boudreaux did not merely utilize the collection services of the department in a good faith effort to decrease animosity between the parties. Rather,

he sought a second opinion in an effort to reduce his child support obligation. If he felt Jennifer's remarriage constituted a change in circumstances, he could have filed a motion with the District Court, allowing the judge who had heard the entire case to make a determination. DCFS, the District Attorney, and the courts of this state "have the affirmative responsibility to act in the best interest of the individual [in this case, the child] on whose behalf action is taken." La. R.S. § 236.1.9. Here, the child's best interests are not served by DCFS's intervention in the matter. Thus, I respectfully dissent and would affirm the Court of Appeal's decision.

**SUPREME COURT OF LOUISIANA**

**NO. 2015-C-0536**

**JOSEPH E. BOUDREAUX, II**

**VERSUS**

**JENNIFER BOUDREAUX**

**CONSOLIDATED WITH**

**JENNIFER ANNE THERIOT BOUDREAUX**

**VERSUS**

**JOSEPH ELTON BOUDREAUX, II**

Hughes, J., dissents with reasons.

I respectfully dissent due to two concerns with the use of the IV-D program by the spouse who owes, rather than receives, child support. When the rights of the holder of a judgment are transferred to the state against the will of the judgment obligee at the behest of the judgment debtor, due process is implicated. Also, while the judge who heard the family matter and the IV-D matter in the case before us was the same, I am concerned that without a district court rule addressing the possibility, judge shopping will occur.