BLEICH, J. (Pro Tempore)
*708 This appeal is from the Fourth Judicial District Court, Ouachita Parish, Louisiana. After an automobile collision, Terany Goldsby filed suit against the State of Louisiana through the Department of Transportation and Development ("DOTD") and its employee, David Blocker. After a trial, the jury returned a verdict assigning comparative fault and awarding to Goldsby general damages and medical expenses, and judgment was entered. Goldsby appeals. For the following reasons, we affirm the trial court's judgment.
FACTS
On November 11, 2013, around 1:50 p.m., Terany Goldsby was driving west on "Perryville" Highway 554, Ouachita Parish, Louisiana, to bring her niece to the Navy recruitment office. Perryville Hwy. is a two lane stretch of highway with no improved shoulder and is marked "no passing." As Goldsby pulled up behind a DOTD dump truck, she stopped her Chevrolet Cobalt and waited for the dump truck to move forward. The dump truck, operated by David Blocker, a DOTD employee, did not pull forward, but instead reversed into Goldsby's vehicle, crushing her vehicle's front end with the dump truck's open tailgate.
At the time of the incident, Blocker had two other DOTD employee passengers with him, and they were using the dump trunk full of asphalt to patch potholes on Perryville Hwy. Blocker had stopped the dump truck to fix a pothole, but had overshot it, requiring him to reverse for a better position. It is undisputed that neither of the other two DOTD employees acted as a "spotter" for Blocker before he began to reverse the dump truck, a DOTD policy requirement. Blocker was cited as "at fault" by the responding officer, reprimanded by his manager for not following policy, and fully accepted fault for the collision at trial.
About one month before this collision, Goldsby had returned to Louisiana after a five-year tour serving with the U.S. Navy. After a full physical examination, she was discharged in good medical condition. On the day of the collision, Goldsby did not complain of injury, but began to have neck and back pain in the following days. She sought treatment with Dr. Gordon Grant, chiropractor, from December 9, 2013, until January 13, 2014.
In January 2014, Goldsby moved to New Orleans, Louisiana, and began seeing Dr. Ryan Russo for continued chiropractic treatment. Dr. Russo referred Goldsby to Dr. Kenneth Vogel, neurosurgeon, for an MRI and evaluation. The MRI was taken in March 2014, but Goldsby did not review this MRI with Dr. Vogel until after she was involved in a second vehicular collision.
On April 2, 2014, Goldsby's vehicle was rear-ended by another driver while stopped at a traffic signal. Subsequent to this second collision, Goldsby went to an appointment with Dr. Vogel, who went over her March 2014 MRI results, which showed disc bulging at L5-S1. Dr. Vogel recommended continued conservative treatment; however, Goldsby discontinued all recommended treatment. A year later she returned to Dr. Russo, who again referred her to Dr. Vogel. In May 2015, Dr. Vogel sent Goldsby for a CT scan which also revealed disc bulging at L5-S1. In July 2015, Goldsby elected to have an intradiscal electrothermal therapy procedure *709 ("IDET"), which is a minimally invasive treatment for spinal disc-related chronic low back pain. The IDET was successfully performed by Dr. Vogel without complications.
Goldsby ultimately filed suit against Blocker and DOTD, claiming her injuries were caused by Blocker during the first collision with the DOTD dump truck. Multiple motions for partial summary judgment were filed by both Goldsby and DOTD, and all were denied. A five-day jury trial commenced in April 2016.
A primary issue at trial was what role each collision played in causing the disc bulging and eventual surgery. During opening statements, defense counsel stated to the jury that Goldsby had received a settlement from the second collision which covered the cost of her medical bills. Goldsby objected to the statement and later testified that the settlement she received was from an unrelated matter with Sallie Mae concerning student loans and not related to the second collision. Goldsby requested a curative instruction be given to the jury to clarify the matter, but the parties could not agree on the wording for a curative jury instruction, and none was given.
After all testimony and evidence was presented at trial, Goldsby made oral motions for directed verdict as to fault and causation. The trial court denied the motion in regard to fault, finding there were some potential comparative fault issues. The trial court partially granted the motion for directed verdict concerning causation, finding that this collision clearly caused some damage to Goldsby, but that it was for the jury to determine the extent of the damage caused by the collision with the DOTD dump truck.
The jury returned a verdict finding both parties to the collision at fault, allocating 95% of the fault to Blocker/ DOTD and 5% to Goldsby. The jury awarded Goldsby the following amounts as compensation for the damages she sustained as a result of the collision: $15,000.00, pain and suffering; $15,000.00, mental anguish; $25,000.00, medical expenses; and, $15,000.00, loss of enjoyment of life. A subsequent judgment was rendered in Goldsby's favor awarding to her $66,500.00 together with legal interest-the total amount of damages awarded to her by the jury, less the 5% of her allocated fault. Goldsby appeals.
DISCUSSION
Allocation of fault
In assessing Goldsby with 5% of the fault, the jury found that her conduct of stopping too close to the dump truck, approximately one to two feet behind it, partially contributed to the cause of the collision and her resulting injuries; thus she is entitled to recover her damages reduced by a percentage thereof corresponding to her portion of comparative fault. In her first assignment of error, Goldsby argues the jury erred by charging her with 5% fault for the collision. We disagree. Based on the trial testimony, it was not clearly wrong for the jury to conclude that Goldsby stopped her vehicle too close to the back of the dump truck, and that her conduct contributed to the cause of the collision.
Since the Louisiana legislature's adoption of a comparative fault system, it has been the task of the fact finder to allocate shares of fault. La. C.C. art. 2323 ; Socorro v. City of New Orleans , 579 So.2d 931 (La. 1991). In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed.
*710 Watson v. State Farm Fire & Cas. Ins. Co. , 469 So.2d 967, 974 (La. 1985) ; Upchurch v. State ex rel. La. Dep't of Transp. & Dev. , 48,34 (La. App. 2 Cir. 08/07/13), 123 So.3d 228, 232, writ denied , 2013-2153 (La. 11/22/13), 126 So.3d 489. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and, (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Socorro , supra , at 942. Because each of the above factors which may influence the respective degrees of fault are factual considerations, the manifest error/clearly wrong standard is applicable. Stobart v. State, Through DOTD , 617 So.2d 880 (La. 1993).
The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey , 1995-1119, (La. 01/16/96), 666 So.2d 607 ; Jewitt v. Alvarez , 50,083 (La. App. 2 Cir. 09/30/15), 179 So.3d 645, 649. Fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement , supra . To reverse a jury's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the jury's finding and that the record establishes that the finding is clearly wrong. Stobart , supra .
At trial, Blocker testified that he was operating the dump truck when the collision occurred. He stated that he had passed up a pothole, stopped the dump truck for about 30 seconds, and then began to reverse. In Blocker's estimation the dump truck had reversed about one foot at five miles per hour before he heard a crash. Blocker testified that prior to the accident he checked all the mirrors and did not see a vehicle behind him.
DOTD's Parish Maintenance Superintendent, Andre Pridgett, testified that the dump truck operated by Blocker was equipped with hazard lights, strobe lights, a backup alarm, and backup lights. Louisiana State Trooper William Woodward testified that the strobe lights on the dump truck were active when he arrived at the scene of the collision. Photographs taken by Tpr. Woodward show an orange light on top of the dump truck. The photographs taken at the scene of the accident also show that Goldsby's vehicle was not visible from the front of the dump truck; therefore, it was likely in Blocker's "blind spot" when he checked the mirrors before backing up. Another post-accident photograph taken from behind her vehicle shows that the dump truck's mirrors are not visible from that vantage point, i.e. , Goldsby had likely stopped so close to the back of the dump truck she could not see the mirrors of the dump truck, which should have indicated to her that the driver of the dump truck could not see her vehicle. Goldsby testified that she did not see the flashing warning lights or hear the backup beeping noises from the dump truck before impact.
After reviewing the record and applying the factors as set forth in Socorro , supra , and Watson , supra , to assess the nature of the conduct of each party, we find there is a reasonable factual basis for the jury's finding, and it was not manifestly erroneous in its allocation of fault. Given these factors, it was reasonable for the jury to conclude that Goldsby's close proximity to the DOTD dump truck somewhat contributed to the collision. This assignment of error is without merit.
*711 Damages Award
In her second assignment of error, Goldsby argues the damages awarded by the jury are inconsistent with the medical evidence and abusively low. The jury awarded Goldsby $25,000.00 in medical expenses and $45,000.00 in general damages ($15,000.00 respectively: pain and suffering, mental anguish, and loss of enjoyment of life). Goldsby claims that the jury abused its discretion in awarding to her only half of her actual medical expenses, and seeks an increase in her awards for both medical and general damages. However, after reviewing the medical testimony, we find the awarded damages in this particular circumstance are not beyond that which a reasonable trier of fact could assess for the injury to Goldsby.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury and the accident which caused the injury. Maranto v. Goodyear Tire & Rubber Co. , 1994-2603 (La. 02/20/95), 650 So.2d 757 ; Henderson v. Gregory , 47,086 (La. App. 2 Cir. 06/20/12), 93 So.3d 818, 820, writ denied , 2012-1695 (La. 11/02/12), 99 So.3d 671. Proof must be by a preponderance of the evidence. Maranto , supra . The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id. Causation is a question of fact and is subject to the manifest error standard of review. Green v. K-Mart Corp. , 2003-2495 (La. 05/25/04), 874 So.2d 838.
To obtain the benefit of the presumption of causation described in Housley v. Cerise , 579 So.2d 973 (La. 1991), the plaintiff must show that (1) she was in good health prior to the accident at issue; (2) subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward; and, (3) through evidence, either medical, circumstantial or common knowledge, a reasonable possibility of causation between the accident and the claimed injury. Housley , supra . If the plaintiff can show these three elements, then she is entitled to a presumption of causation and the burden of proof shifts to the defendant to prove some other particular incident could have caused the injury of which the plaintiff complains. Zimmerman v. Progressive Sec. Ins. Co. , 49,982 (La. App. 2 Cir. 08/12/15), 174 So.3d 1230, 1240, writ denied , 2015-1955 (La. 11/30/15), 184 So.3d 36, recons. denied , 2015-1955 (La. 01/15/16), 184 So.3d 701. If the plaintiff cannot show these three elements, she is not entitled to a presumption of causation and the burden of proof does not shift to the defendant. Id. To rebut this presumption, the defendant must show that some other particular incident could have caused the injury in question. Detraz v. Lee , 2005-1263 (La. 01/17/07), 950 So.2d 557 ; Zimmerman , supra . The application of the Housley presumption of causation to the facts is also a question of fact and subject to manifest error review. Id.
A plaintiff may recover past medical expenses that she incurs as a result of an injury due to the fault of another. Bruce v. State Farm Ins. Co. , 37,704 (La. App. 2 Cir. 10/29/03), 859 So.2d 296, 304. To recover medical expenses, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by the accident. Id.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve "mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely *712 measured in monetary terms." Bellard v. American Cent. Ins. Co. , 2007-1335 (La. 04/18/08), 980 So.2d 654. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1 ; Zimmerman , supra . It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Zimmerman , supra . The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. An appellate court may disturb a damage award only when the record clearly reveals that the jury abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Id.
Dr. Gordon Gregory Grant, IV, an expert in chiropractic care, treated Goldsby from December 9, 2013, through January 13, 2014. He testified that Goldsby presented in his office with neck pain, upper back pain, low back pain, and headaches which she attributed to an automobile accident that occurred about two weeks before her initial appointment. The physical exam performed by Dr. Grant revealed a decreased normal range of cervical and lumbar motion. Orthopedic testing indicated nerve root irritation and injury to the low back and neck, as well as the thoracic spine. Dr. Grant performed digital palpation, confirming the existence of muscle spasms. He also ordered an X-ray that showed Goldsby had a decreased curvature of the spine. To reduce swelling and inflammation, Dr. Grant recommended cold therapy for Goldsby's back and a treatment plan of 3 visits per week for 15-20 weeks. Dr. Grant diagnosed Goldsby with back strain/sprain.
After about a month of treatment with Dr. Grant, 15 appointments in total, Goldsby moved to New Orleans seeking employment. Dr. Grant recommended Dr. Ryan Russo of Lakeside Chiropractic Clinic to Goldsby. Dr. Russo referred Goldsby to Dr. Kenneth Vogel, neurosurgeon. Dr. Vogel testified by video deposition that Goldsby related she was in relative good health until the incident in November 2013, which had caused back and left knee pain, and this pain was worsened by a second collision in April 2014. Dr. Vogel agreed with the radiologist concerning the 2014 MRI, showing cervical strain and herniated lumbar disc. His impression was that the symptoms described by Goldsby were likely caused by the collision on November 2013, with a doubling of pain after the April 2014 incident, and he recommended that Goldsby continue conservative treatment. Dr. Vogel testified that the next time he saw Goldsby was a year later, in June 2015. He re-evaluated her symptoms and noted continued cervical pain, with a mild degree of limited motion and muscle spasm, but knee pain resolving. Dr. Vogel noted Goldsby was unresponsive to conservative treatment and offered hospital admission for further evaluation. Goldsby underwent the IDET procedure a month later.
During the deposition, Dr. Vogel was asked which accident was responsible for the necessity of the IDET procedure. He testified that "the one that caused the pain initially and caused the abnormalities as shown on the MRI in all probability caused the injury. Now the second injury could have made it worse, but you and I will never know."
Dr. Blake McGehee, the defense expert who was not Goldsby's treating physician, *713 agreed with Dr. Vogel that the second collision worsened Goldsby's injures. Goldsby also testified the second collision aggravated her back injuries.
The parties stipulated that Goldsby's medical bills total $46,449.71. Of that amount, $7,305.00 accrued after the first collision, but before the second, and $39,144.71 accrued after the second collision, with the majority of that amount attributable to combined charges related to the IDET procedure.
Goldsby demonstrated, through medical testimony, that more probably than not, the subsequent medical treatment was necessitated by the trauma suffered in the collision with the DOTD dump truck. Based on the evidence in the record it is unclear, and there is no medical evidence that can objectively show, which collision definitively necessitated the eventual IDET procedure to correct Goldsby's injuries. Goldsby established by her military discharge physical examination that she was in good medical health before the first collision; subsequent to the collision with the DOTD dump truck, symptoms of back injury appeared, and continuously manifested, leading to a reasonable possibility of causation between that collision and Goldsby's claimed injuries.
The question faced by the jury was whether the second collision caused or worsened Goldsby's injuries. The record reflects a lack of conclusive evidence that, more probably than not, the IDET procedure was necessitated by the first collision. The jury as fact finder is given vast discretion, and its findings shall not be disturbed on appeal absent a finding of abuse of that discretion. After review of the record in its entirety, we cannot find that the jury committed manifest error in awarding $25,000.00, roughly a little more than half Goldsby's proven total medical expenses, considering the fact that two collisions occurred and both likely contributed in some way to the eventual procedure undergone by Goldsby.
An appellate court may disturb a general damage award only when the record clearly reveals that the jury abused its discretion in making the award. Here, the jury awarded Goldsby $45,000.00. Based on the facts and circumstances peculiar to Goldsby, specifically the fact that she discontinued conservative treatment and went almost a year before returning to Dr. Russo, we do not find a clear abuse of discretion by the jury. Thus, this assignment of error is without merit.
Curative Jury Instructions
In her third assignment of error, Goldsby contends that the trial court erred by failing to issue a curative instruction to the jury after defense counsel in alluded to a settlement which may have paid some of Goldsby's medical expenses. Goldsby argues the trial court's failure to cure this misstatement concerning a settlement led to an abusively low damages award. Goldsby claims this is an error of law which requires de novo review. We disagree.
The parties are entitled to a fair trial uninfluenced by appeals to passion or prejudice. Henderson v. Louisiana Downs, Inc. , 566 So.2d 1059, 1063 (La. App. 2 Cir. 1990), writ denied , 569 So.2d 984 (La. 1990). However, counsel has great latitude in argument before a jury, subject to the regulation and control of the trial court, whose duty it is to make certain the argument stays within proper bounds. Ogletree v. Willis-Knighton Mem. Hosp. , 530 So.2d 1175 (La. App. 2 Cir. 1988), writ denied, 532 So.2d 133 (La. 1988). Unless the contrary is clearly shown, rulings on allegedly prejudicial improper argument or conduct of counsel are presumed to be within the trial court's great discretion.
*714 Henderson , supra . The rulings of the trial court will not be reversed absent an abuse of such discretion. Id.
Evidence of a settlement or compromise between the plaintiff and another tortfeasor is ordinarily inadmissible. La. C.E. arts. 408, 409, and 413. A jury verdict will not be set aside because of an incorrect jury instruction absent a showing of prejudice such that the jury was misled and was unable to render a just verdict. Jeff Mercer, LLC v. State through Dep't of Transp. & Dev. , 51,371 (La. App. 2 Cir. 06/07/17), 222 So.3d 1017, 1023, reh'g denied (La. App. 2 Cir. 08/04/17).
The trial court is required to instruct jurors on the law applicable to the cause submitted to them, and may give additional instructions when appropriate. La. C.C.P. arts. 1792 -93, 1796; Jeff Mercer , supra. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. Jeff Mercer, supra . The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems appropriate. Id. The charge must correctly state the law and be based on evidence adduced at trial. Id.
Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. Peironnet v. Matador Resources Co. , 2012-2292 (La. 06/28/13), 144 So.3d 791 ; Jeff Mercer , supra . Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Simmons v. Christus Schumpert Med. Ctr. , 45,908 (La. App. 2 Cir. 06/15/11), 71 So.3d 407, 425, writs denied , 2011-1591-92 (La. 10/07/11), 71 So.3d 317-8. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. Id. This policy requires an appellate court to presume a jury will not disregard its sworn duty and be improperly motivated, and will render a decision based on the evidence and the totality of the instructions provided by the judge. Id. ; Adams v. Rhodia, Inc. , 2007-2110 (La. 05/21/08), 983 So.2d 798, 804.
Ultimately, the determinative question is whether the jury instructions, or lack thereof, misled the jury to the extent that it was prevented from dispensing justice. Jeff Mercer, supra. The standard of review in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. Id.
Goldsby contends that defense counsel incorrectly referenced a settlement with the party involved in the second collision. This alleged incorrect mention of a settlement was made in front of the jury during opening statements, as evidenced by the record:
Defense Counsel: Also, a claim was made as a result of the second accident. And it was resolved, and the bills of Dr. Russo and the bills to date of Dr. Vogel were included and settled in that claim.
Plaintiff Counsel: Objection, Your Honor. That's totally out of balance. May we approach ... (bench conference occurs).
Once the jury was removed, this objection was argued. Counsel for Goldsby requested a curative instruction, asserting that La. C.E. art. 413 bars mention of *715 outside settlements, and the Code of Evidence bars admissibility of irrelevant evidence which may prejudice the jury. The trial court determined that the decision on whether a curative instruction was necessary would be better made after the matter was potentially resolved by examination of witnesses.
On direct examination, Goldsby related that she paid the medical bills for Dr. Vogel out-of-pocket using money from a settlement with Sallie Mae concerning student loans. Goldsby explained that she received a check from that settlement on June 12, 2015, and used the money to pay her medical expenses related to her back injuries. The release of claims form from Sallie Mae was entered into evidence as plaintiff Exhibit 17. Goldsby also testified that she had not received a settlement from any insurance company in connection with the April 2014 collision.
The allegedly objectionable statement was potentially subject to corrective measures. The trial court sustained Goldsby's objection to the statement. Further, the court admonished the jury, at the start of the trial and when all parties had rested, that the statements of counsel were not evidence, but that opening statements are opinions about what counsel intends to prove and should not interfere with its determination of the facts. At the conclusion of the trial, because the parties could not agree on what type of instruction to give concerning the alleged misstatement by counsel during opening statements, none was given, and the trial court determined it was best not to give any more weight than necessary to the misstatement by belaboring this issue.
Louisiana C.C.P. 1792 requires the court to instruct the jury on matters of law, and give instructions to reduce any confusion on the applicable law. It leaves to the court's discretion whether to use instructions submitted by either party to clarify confusion as to facts; therefore, de novo review is not appropriate here as requested. As the reviewing court, we must exercise great restraint before disregarding a jury verdict and conducting a de novo review of the record. The jury instructions given by the trial court adequately provided the correct principles of law. Goldsby's mere allegation that the failure to issue a curative instruction caused prejudice and led to an abusively low damages award does not automatically trigger a de novo review of this record.
We find that the trial court did not err in refusing to specifically instruct the jury with regard to the mention of a settlement during opening statements. A careful review of the record demonstrates that throughout the trial, both parties commented on the fact that Goldsby received "a settlement." Both parties had adequate opportunity to question Goldsby about the settlement, and during Goldsby's testimony it was made quite clear that the only settlement she received was from Sallie Mae regarding student loan payments, and not in connection with any automobile collisions. Thus, the trial court had no obligation to give the jury the specifically requested instruction, because the issue was clarified throughout the trial. We find no error in the trial court's decision not to provide an instruction on this issue. This assignment lacks merit.
Motion for JNOV, Additur, or New Trial
Goldsby's fourth assignment of error concerns the denial of her post-trial motions for judgment notwithstanding the verdict ("JNOV"), additur, and new trial. This argument incorporates the arguments made previously by Goldsby concerning the jury's verdict. Considering we find the jury did not abuse its discretion in allocating fault or awarding damages, we likewise *716 find the trial court did not abuse its discretion in denying these motions.
A motion for JNOV may be granted on the issues of liability, on the issue of damages, or on both issues. La. C.C.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict. Anderson v. New Orleans Pub. Serv., Inc. , 583 So.2d 829 (La. 1991). Additur becomes proper only when, inter alia , a jury awards an amount that is lower than the lowest permissible, reasonable amount. Lennard v. State Farm Mut. Auto. Ins. Co. , 26,396 (La. App. 2 Cir. 01/25/95), 649 So.2d 1114, 1119.
A new trial is mandated only upon a showing of jury misconduct which is of such a grievous nature as to preclude the impartial administration of justice. Williams v. Super Trucks, Inc. , 36,993 (La. App. 2 Cir. 04/09/03), 842 So.2d 1210, 1220-21, writ denied , 2003-1303 (La. 09/05/03), 852 So.2d 1042. Otherwise, the granting of a new trial is left to the sound discretion of the trial court. Id. A decision to deny a motion for new trial based upon jury misconduct is reviewed pursuant to an abuse of discretion standard. Wright v. Hirsch , 560 So.2d 835 (La. 1990) ; Williams , supra . When reviewing the denial of a motion for new trial, unless an abuse of discretion can be exhibited, the trial court's decision will not be reversed. Id.
In this case, as already discussed, the verdict reached by the jury was reasonable based on the evidence presented at trial. The evidence did not point so strongly in favor of Goldsby that a reasonable jury could not reach a different conclusion. The trial court did not abuse its discretion in determining that neither additur nor granting a new trial was proper in this instance. Thus, the trial court did not err in its denial of Goldsby's post-trial motions, and this assignment has no merit.
CONCLUSION
For these reasons, the jury verdict and judgment of the trial court are affirmed. Costs of this appeal are cast to appellant, Terany Goldsby.
AFFIRMED.