Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,030-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STACEY WEIR, MITCHELL                    Plaintiffs-Appellants
ODOM, JR., AND RITA ODOM

versus

KILPATRICK'S ROSE-NEATH                  Defendant-Appellee
FUNERAL HOMES,
CREMATORIUM AND
CEMETARIES, INC.

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 77,369

Honorable Amy Burford McCartney, Judge

* * * * *

T. TAYLOR TOWNSEND, LLC                  Counsel for Appellants
By: Thomas Taylor Townsend

KAMMER & HUCKABAY, LTD
By: Charles H. Kammer, III

COOK, YANCEY, KING & GALLOWAY            Counsel for Appellee
By: Elizabeth Mendell Carmody
    Jordan B. Bird

MORRIS & DEWETT, LLC
By: Josh Powell

* * * * *

Before COX, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

The surviving spouse and adult daughter of the decedent appeal the damages awarded by a jury against the defendant funeral home hired by them to oversee the embalming, visitation, funeral arrangements, and burial of their husband and father.[1] The jury found negligence on the part of the funeral home and awarded general damages to both plaintiffs, as well as damages for future medical expenses. The plaintiffs appeal the failure of the jury to award past medical expenses and appeal as abusively low the amount of the awards of future medical expenses and general damages. For the following reasons, we affirm the jury's verdict in part and reverse in part.

## FACTS

The plaintiffs, Stacey Weir ("Stacey") and Rita Odom ("Mrs. Odom"), are the daughter and wife, respectively, of Mitchell Grant Odom, Sr. ("Mr. Odom"), who suddenly and unexpectedly died of a heart attack on May 2, 2015. Mr. and Mrs. Odom had been married for over 40 years, and Stacey is their daughter. Only because the nature and extent of the relationship between a plaintiff and a decedent may be relevant in quantum decisions by a trier of fact, we note that the record reflects that the Odoms had previously separated for a period of time during their marriage but later reconciled. They were also living separate and apart for a number of weeks at the time of Mr. Odom's death, with Mr. Odom residing in the apartment located over his brother's garage. Mrs. Odom described those living arrangements as temporary, and the record reflects no divorce proceedings were instituted by either party.

---

[1] We note that the defendant's name, Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, was misspelled in the caption of the pleadings by plaintiffs.

After Mr. Odom's death, Mrs. Odom retained and signed a contract with the defendant, Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, Inc. ("Rose-Neath"), to oversee preparation of Mr. Odom's body, as well as his visitation, funeral, and burial. Mrs. Odom and Stacey expressed their desire to have an open casket at the funeral and were never informed by Rose-Neath when planning the funeral that it would be more appropriate to have a closed casket. They were never advised to alter those original plans when challenges arose from the condition of Mr. Odom's body during the visitation and funeral service. Plaintiffs allege that Rose-Neath should have intervened and taken corrective action when the circumstances surrounding the visitation and funeral deteriorated.

It is undisputed that Mr. Odom's body was prepared for his visitation and funeral by Rose-Neath. Embalming is designed to slow the natural and unavoidable process of decomposition of the body and its unpleasant side effects. There was evidence adduced from Rose-Neath's employee that the embalming process of Mr. Odom was difficult, and he testified that at the time of embalming, he noticed signs of decomposition, including discoloration and an unusual odor.

The visitation and funeral services got off to an unfortunate start when Mr. Odom's body was not timely delivered to Rose-Neath's Logansport funeral home as scheduled on May 4, 2015. While there is some dispute as to exactly what time the visitation was set to occur, it is undisputed that Mr. Odom's body was delivered at least thirty minutes late to the visitation, arriving after family and friends had gathered to show their respects.

Louisiana in May can be unpleasantly warm. Testimony established it was also uncomfortably hot inside the funeral home when the plaintiffs arrived that evening for Mr. Odom's visitation. When Mrs. Odom and Stacey arrived, it was apparent that the air conditioning inside the building was not and had not been properly functioning that day. Heat can accelerate the decomposition process. After Mr. Odom's body was delivered to the visitation, people who attended noticed an odor coming from the deceased. Plaintiffs testified they were not particularly aware of the odor during visitation. Mr. Odom's body was kept by the funeral home overnight in the unairconditioned chapel.

By the time of the funeral the following day, testimony established that Mr. Odom's body had begun to swell with gases, was leaking fluids, and was emitting a noxious odor. Stacey testified she got up several times to wipe fluids emitting from her father's mouth before the funeral services began. There is also testimony from several people who attended the funeral about the leaking fluid and a terrible odor of decay. Some of the funeral attendees had to leave the chapel during the funeral, reportedly due to the heat and the smell inside the building. After the funeral service, the deceased was moved to the cemetery and properly interred.

Plaintiffs allege that despite Rose-Neath being alerted by the embalmer of the condition of Mr. Odom's body and the fact that it was not taking the embalming process well, Rose-Neath never suggested that the visitation and funeral should be a closed casket service. Stacey testified that if someone had told her or her mother that they needed to have a closed casket due to the state of the body, they would have agreed to do so.

3

Plaintiffs also assert Rose-Neath never undertook any remedial efforts to resolve the lack of air conditioning at the location nor did it offer to relocate the visitation and funeral services to any of its other neighboring locations, which would have had appropriate climate control for keeping Mr. Odom's body overnight, as well as provided more comfortable conditions for the attendees at the services.

Following Mr. Odom's burial, Stacey and Mrs. Odom sought treatment beginning May 25, 2016, with a licensed social worker, Carole Pruett ("Pruett"), for the emotional challenges they allege were brought on by the condition of Mr. Odom's body and events surrounding his visitation and funeral services. Pruett diagnosed both women with post-traumatic stress disorder ("PTSD") related to their experiences at the visitation and funeral. Pruett testified that she treats PTSD with eye movement desensitization reprocessing ("EMDR"). She saw Mrs. Odom 31 times between May 25, 2016 and March 15, 2018, and EMDR was initiated four times. Pruett testified that Mrs. Odom shut down with the last two EMDR sessions and they were not completed.

Pruett saw Stacey approximately 30 times between May 25, 2016 and April 18, 2018, and EMDR was initiated two times. Pruett testified that Stacey stopped the processing early in both sessions. Pruett testified that both Mrs. Odom and Stacey would avoid their feelings related to the visitation and funeral and had consistent resistance to EMDR.

On November 6, 2018, Mrs. Odom started treatment with Shelley Visconte, a psychologist, who also diagnosed her with PTSD. Mrs. Odom saw Dr. Visconte five times between November 6, 2018 and August 23,

2019.  Dr. Visconte testified that people who experience post-traumatic stress engage in avoidance, meaning they have a fear of things that trigger memories or thoughts of the traumatic event.  Dr. Visconte described Mrs. Odom as having nightmares and flashbacks of the funeral.  Mrs. Odom also had physiological responses, including increased heart rate, shortness of breath, and anxiety.  Mrs. Odom missed some of her appointments with Dr. Visconte, but the doctor later testified that she attributed the missed appointments as avoidance and noted that avoidance is very typical of those people who have PTSD.  Dr. Visconte believed Mrs. Odom could benefit from continued future treatment and, under questioning, estimated the costs for the recommended treatment to be between $6,000 and $10,000.

Stacey began seeing Dr. Jennifer Russell, a psychologist, on February 7, 2019, and Dr. Russell treated Stacey five times between February 7, 2019 and June 25, 2019.  Dr. Russell diagnosed Stacey with PTSD and also noted the avoidance symptoms of PTSD, including missing or cancelling several of her appointments.

Plaintiffs submitted to an independent medical examination on July 27, 2017, with Rose-Neath's medical expert, Dr. Daniel Feeney, who is a board-certified psychiatrist.  Dr. Feeney diagnosed both plaintiffs with PTSD specifically related to the handling of Mr. Odom's body and funeral. Dr. Feeney gave each plaintiff a 10% to 30% disability rating due to their traumatic experience.

On February 18, 2020, the parties began a three-day trial which included a number of witnesses including: Richard Tull, Rose-Neath's embalmer, Dr. Shelley Visconte, Mrs. Odom's treating psychologist, Erma

5

Spears, Rose-Neath's Logansport receptionist who noticed the air conditioning not working, Bill Spears, who managed Rose-Neath's Logansport location on the day of the visitation, Dr. Daniel Feeney, the independent medical examiner, Dr. Jennifer Russell, Stacey's treating psychologist, Mrs. Odom, Stacey, and several friends and family of the Odoms who all attended the visitation and funeral, including Mrs. Odom's sister, Tammy Weaver, Mrs. Odom's brother, Danny Weaver, Mrs. Odom's best friend, Kathy Reeves, and Stacey's best friend, Staci Dechamplain.

After the third day of trial, the case was turned over to the jury, and after two hours of deliberation, the jury returned its verdict in favor of the plaintiffs. The jury found that plaintiffs had proven by a preponderance of the evidence that Rose-Neath was negligent with regard to the visitation and/or funeral of Mr. Odom and awarded $5,000 in general damages each to Stacey and Mrs. Odom, which amount included past and future pain, suffering, and mental anguish. The jury also awarded $5,000 each to Stacey and Mrs. Odom for future medical expenses, but there was no award given to either woman for past medical expenses incurred from the date of the funeral through trial. Plaintiffs now appeal, arguing that they should have been awarded past medical expenses, that Mrs. Odom's future medical award was abusively low, and that both plaintiffs received an abusively low general damages award.

## DISCUSSION

**First Assignment of Error:** **The jury erred in failing to award past medical expenses, and the award was internally inconsistent since the jury awarded future medical expenses.**

In their first assignment of error, plaintiffs argue that the jury erred in failing to award past medical expenses, a result that is internally inconsistent because the jury awarded future medical expenses. Rose-Neath urges that the jury's decision is not internally inconsistent because there were permissibly conflicting views of the evidence that could allow the jury to reject an award of past medical expenses.

Special damages are those damages that can be determined with some degree of certainty and include past and future medical expenses. *Richardson v. Christus Shumpert Health Sys.*, 47,776 (La. App. 2 Cir. 2/27/13), 110 So. 3d 264, *writ denied*, 13-0621 (La. 4/19/13), 112 So. 3d 228. Medical expenses are a component of special damages. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Id.* An award of special damages is reviewed pursuant to the manifest error standard of review.

In *Cormier v. Colston*, 05-0507 (La. App. 3 Cir. 12/30/05), 918 So. 2d 541, a tenant brought an action against her landlord to recover damages when she fell down the steps of her rented home and injured her knee. The jury was presented with expert medical testimony from only one witness, who testified that the tenant's injuries were caused by the fall from her steps, even though she had previous knee problems. He testified regarding her past medical bills for his services and provided an estimate of future medical costs to repair the knee. The jury returned a verdict awarding the tenant future medical costs but no past medical costs. *Id.*

The jury specifically found that the defendant was negligent and that negligence contributed to the accident, which caused the plaintiff's injuries.

The *Cormier* court stated that "[d]espite these specific findings, the jury then ignored the uncontradicted past medical expenses associated with treatment for the same injury for which it awarded future medical expenses." *Id.* The court found that the jury's verdict appeared internally inconsistent and stated that it must then determine if there was a reasonable basis discernible in the record for the apparent inconsistences in the jury's verdict.

We find in the present matter that the jury's grant of an award for future medicals to Stacey and Mrs. Odom but the denial of an award for past medical expenses is internally inconsistent. The genesis of the emotional harm to Stacey and Mrs. Odom is their experience at the events surrounding the visitation and funeral of Mr. Odom. We must determine whether there is a reasonable basis for this apparent inconsistency in the record, *i.e.* recognizing the damage caused by Rose-Neath and compensating Stacey and Mrs. Odom for future medical expenses but excluding the treatments for the time period between the funeral and the trial for that same damage.

The record reflects that Stacey and Mrs. Odom sought treatment with Pruett, who diagnosed both women with PTSD related to Mr. Odom's visitation and funeral. Pruett treated each woman approximately 30 times. Mrs. Odom sought further treatment from Dr. Visconte, a psychologist, who diagnosed her with PTSD related to the visitation and funeral. Stacey began treatment with Dr. Russell, a psychologist, who diagnosed Stacey with PTSD stemming from her father's funeral and visitation. Mrs. Odom's expenses for the medical treatment she sought related to her traumatic experience total $5,145. Stacey's expenses for her medical treatment are $4,835.

8

The only other medical expert who testified at trial was Rose-Neath's expert psychiatrist, Dr. Feeney. Dr. Feeney diagnosed both plaintiffs with PTSD linked specifically to the funeral and the condition of Mr. Odom's body. Dr. Feeney testified that he would estimate an impairment rating at 10-30% minimum for each plaintiff. The record is clear and undisputed that both plaintiffs suffered PTSD dating back specifically to the traumatic experience they had at their loved one's visitation and funeral. Rose-Neath's own expert concluded that the plaintiffs had PTSD. At trial, Rose-Neath questioned the efficacy of plaintiffs' treatments but did not dispute the fact that they incurred the above medical bills.

At the conclusion of the trial, the jury found that Stacey and Mrs. Odom proved by a preponderance of the evidence that Rose-Neath was negligent with regard to the visitation and/or funeral of Mr. Odom. The jury also found that Stacey and Mrs. Odom had proven by a preponderance of the evidence that Rose-Neath's negligence caused them damages for which they should be compensated.

The jury verdict is clear that the jurors believed plaintiffs had been injured by Rose-Neath's negligence at the visitation and funeral and that injury was sufficiently serious that it would require future medical treatments. As such, the jury clearly believed the injury done to the plaintiffs occurred at the time of Mr. Odom's visitation and funeral, not by reliving the experience during trial, as the defendant suggests. If the injury done to the plaintiffs, for which Rose-Neath is responsible, occurred at the time of the funeral, then Rose-Neath should be responsible for the medical expenses incurred as a result of that injury, beginning from the day of injury.

We find the fact that the jury failed to award damages for past medical expenses to be internally inconsistent and not reasonably explained from the record. By its factual conclusions and the award of future medical expenses, the jury could not have reasonably ignored the existence of past medical expenses for the same injuries. Mrs. Odom and Stacey have established their entitlement to past medical expenses.

If the factual findings are manifestly erroneous or clearly wrong such that a plaintiff is entitled to an award for a particular category of damages, and the jury fails to make such an award, the reviewing court is to perform a *de novo* review of the record and make an award. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 875 So. 2d 838. Based on our review of the record, we reverse the jury and trial court on these issues and award Mrs. Odom $5,145 in past medical expenses and Stacey $4,835 in past medical expenses.

**Second Assignment of Error: The jury's award of future medicals was abusively low for Rita Odom.**

Plaintiffs argue that the jury's award of $5,000 in future medical expenses to Mrs. Odom was abusively low because Dr. Visconte estimated that Mrs. Odom's future medical expenses would range from $6,000 to $10,000 for the course of the recommended treatment plan. Rose-Neath argues that this award was not abusively low because there is contradictory evidence in the record about the number of future sessions required.

Factual determinations of a trier of fact may not be reversed absent manifest error or unless they are clearly wrong. *Green*, *supra*, *quoting Pinsonneault v. Merch. & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So. 2d 270, 278-79. Credibility determinations are for the trier of fact,

even as to the evaluation of expert witness testimony. *Green*, *supra*. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. The trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. *Id.*

In the present matter, while Dr. Visconte testified that her estimate of the expense of Mrs. Odom's recommended future care would cost between $6,000 and $10,000, these numbers were based on an estimated two rounds of 12 sessions of cognitive processing therapy, at a cost of $150 per session. The record reflects that at the time of trial, Mrs. Odom had incurred only $750 in medical expenses from Dr. Visconte and had not been in for treatment with her for over six months. Further, Dr. Russell, who did not treat Mrs. Odom, testified that cognitive processing therapy usually only requires 12 sessions. Finally, all the experts agreed that PTSD can be cured.

We find that the jury's award of $5,000 to Mrs. Odom for future medical expenses was not manifestly erroneous. There is evidence in the record to support a slight deviation from the treatment plan and corresponding costs recommended by Dr. Visconte. It is not this court's place to reweigh the evidence presented to the jury when its conclusions are not manifestly erroneous. The jury awarded future medical expenses in an amount not so far from the amount sought by plaintiff as recommended by the treating provider, and we therefore cannot conclude the jury was in error. For the foregoing reasons, we find this assignment of error is without merit.

**Third Assignment of Error:** **The jury's award of general damages was abusively low.**

11

Finally, plaintiffs argue that the jury's award of general damages in the amount of $5,000 each is abusively low. Rose-Neath argues that the amount of general damages awarded by the jury is within its discretion based on the facts and circumstances of this case.

General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So. 2d 70. The trier of fact is vested with great discretion, so that an appellate court should rarely disturb an award of general damages. *Goldsby v. Blocker Through Dep't of Transp. & Dev.*, 51,584 (La. App. 2 Cir. 9/27/17), 244 So. 3d 703. It is only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. *Id.*

The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but, rather, to review the exercise of discretion by the trier of fact. *Wainwright*, *supra*. An appellate court may disturb a damage award only when the record clearly reveals that the jury abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. *Goldsby*, *supra*.

The record in this case reveals that the plaintiffs were dealing with the loss of a loved one, notwithstanding the living arrangements of Mr. Odom and Mrs. Odom at the time of his death. The jury was tasked with fixing damages by comparing the already traumatic loss of a loved one with those

circumstances intensified by the described deteriorating conditions of Mr. Odom's body. Mrs. Odom and Stacey undoubtedly suffered from the experience of seeing the condition of their loved one's body during his visitation and funeral. They were both diagnosed with PTSD related specifically to the visitation and funeral of Mr. Odom. However, there is evidence that the progress of both plaintiffs' treatment for PTSD had slowed by the time of trial. Additionally, in fixing the amount of damages, the jury had the benefit of testimony at trial, addressing a degree of potential estrangement between the deceased and his family, as he was living over his brother's garage, rather than in the family home, at the time of his death. Plaintiffs were afforded the opportunity at trial to explain those circumstances. The full extent of those conditions and any impressions and credibility determinations were there to be made by the jurors when listening to live testimony. The issue is not whether this court would have fixed damages at a different amount, but rather, whether there was sufficient information presented to the trier of fact to support their ultimate award.

The verdict and award by the jury was originally also subject to considered review by the trial court. At the conclusion of the trial, plaintiffs filed a motion for judgment notwithstanding the verdict, and, alternatively, motion for new trial and/or additur. The trial court, having been present at the trial, hearing witnesses testify, and having had the benefit of a procedural history with this litigation, denied the plaintiffs' request for a JNOV or a new trial.

The facts of this case and the apparent condition of Mr. Odom's body during his visitation and funeral are disturbing. These unfortunate

13

conditions clearly exacerbated the grief of plaintiffs in losing a loved one, making a difficult situation even worse. The jury found that Rose-Neath's negligence turned a sad event into a traumatic one for those closest to Mr. Odom. The trial court apparently agreed with the conclusions reached by the jury. Based upon this record we cannot say that the jury abused its discretion in awarding general damages of $5,000 to each plaintiff based on the totality of the evidence presented. The discretion vested in the trier of fact is vast and an award of general damages should rarely be disturbed. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment insofar as it fails to award past medical expenses to the plaintiffs and we hereby render judgment awarding past medical expenses in the amount of $5,140 to Rita Odom and $4,835 to Stacey Weir. In all other respects, we affirm the remaining portions of the judgment and tax costs of the appeal to the defendant, Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, Inc.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**